# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2770

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| vs. | * | |
| | * | Appeal from the United States |
| $404,905.00 in U.S. Currency, | * | District Court for the District |
| | * | of Nebraska. |
| Defendant, | * | |
| | * | |
| Stephen Alexander, | * | |
| | * | |
| Claimant - Appellant. | * | |

_____

Submitted:  January 21, 1999

Filed:  June 29, 1999

_____

Before McMILLIAN, BEAM, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Omaha police officer Anthony Ward stopped a truck and U-Haul trailer driven by Stephen Alexander for speeding on Interstate 80.  Officer Ward's K-9 dog, Fanta, alerted on the outside of the trailer, and a full search uncovered $404,905 in drug-tainted United States currency.  The government commenced this civil forfeiture proceeding against the currency.  Alexander timely filed a claim.  Following a bench

trial, the district court[1] concluded that the government established probable cause linking the currency to drug trafficking and declared it forfeited. See 21 U.S.C. § 881(a)(6). Alexander appeals. The issue on appeal is whether Officer Ward violated Alexander's Fourth Amendment rights during the traffic stop, a novel issue concerning the Fourth Amendment interplay between traffic stops and canine sniffs. We agree with the district court's resolution of the issue and therefore affirm.

We briefly recite the relevant facts as found by the district court. After stopping the vehicle for speeding, Officer Ward obtained Alexander's driver's license, vehicle registration, and U-Haul rental papers and returned to his cruiser, where he completed license and vehicle checks in five to eight minutes. Before returning these documents to Alexander, Ward exited his cruiser with Fanta and told Alexander the dog would sniff the exterior of his truck and trailer for drugs. We quote the district court's description of what happened next:

> Ward commenced the canine sniff at the front end of the U-haul trailer, walked down the driver's side, turned and walked towards the rear, and proceed[ed] back on the opposite side. As Ward proceeded to the right front portion of the trailer his dog alerted. Ward estimated that it took his dog less than thirty second[s] to walk three quarters of the way around the perimeter of the trailer where it alerted. Ward advised Alexander that his dog had alerted on his trailer and advised Alexander that he would have to search the trailer. . . . Ward estimated that he took under two minutes to conduct the canine sniff, return the dog to the cruiser, and approach Alexander to advise him the dog had alerted to the trailer.

After Alexander unlocked the trailer, Officer Ward instructed Fanta to sniff for drugs. The dog promptly alerted on a duffel bag and boxes which smelled strongly of

---

[1]The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska.

marijuana and contained bundles of money. The truck and trailer were taken to the Omaha impound lot, where a full search uncovered the $404,905 in question.

The Fourth Amendment's exclusionary rule applies to quasi-criminal forfeiture proceedings. If the currency and other contents of Alexander's vehicle should be suppressed because of an unconstitutional search or seizure, the government must prove probable cause with other, untainted evidence. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965); United States v. $7,850.00 in U.S. Currency, 7 F.3d 1355, 1357 (8th Cir. 1993). Alexander argues that Officer Ward violated the Fourth Amendment when he led Fanta on a canine sniff of the trailer's exterior. The Fourth Amendment protects against unreasonable searches and seizures. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Seizure includes official detention of a person as well as meaningful interference with a person's possessory interests in property. See Michigan v. Summers, 452 U.S. 692, 696-700 (1981). "Reasonableness . . . is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 117 S. Ct. 417, 421 (1996). In addition to these general standards, certain important, undisputed Fourth Amendment principles frame the novel issue we must resolve.

First, a police officer who personally observes a traffic violation has probable cause to stop the vehicle and offending driver. See Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977); United States v. Barahona, 990 F.2d 412, 416 (8th Cir.1993). On the other hand, when police have no probable cause to stop for a traffic violation, a purely investigative stop must be based upon at least a reasonable suspicion "that either the automobile or its occupants are subject to seizure under the applicable criminal laws." Delaware v. Prouse, 440 U.S. 648, 655 (1979). A valid traffic stop may not be challenged on the ground that it was a pretext for other criminal investigation. See Whren v. United States, 116 S. Ct. 1769, 1772-74 (1996). Alexander concedes he was validly stopped for speeding.

Second, having made a valid traffic stop, the police officer may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. See United States v. Carrazco, 91 F.3d 65, 66 (8th Cir. 1996). During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered.[2]

Third, a canine sniff of the exterior of personal property in a public location "is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure" that it does not constitute a "search" within the meaning of the Fourth Amendment. United States v. Place, 462 U.S. 696, 707 (1983) (luggage at an airport). That principle applies to the canine sniff of the exterior of Alexander's U-Haul trailer stopped along an interstate highway. In general, "[t]he exterior of a car . . . is thrust into the public eye, and thus to examine it does not constitute a 'search.'" New York v. Class, 475 U.S. 106, 114 (1986). We have held that "a dog sniff of a car parked on a public street or alley [does] not amount to a search for Fourth Amendment purposes." United States v. Friend, 50 F.3d 548, 551 (8th Cir. 1995), vacated in part, 517 U.S. 1152 (1996). Similarly, other circuits have concluded that a dog sniff of the exterior of a car waiting at a roadblock established to check licenses and vehicle registrations is not a Fourth Amendment search. See Merrett v. Moore, 58 F.3d 1547, 1553 (11th Cir. 1995), cert. denied, 519 U.S. 812 (1996); United States v. Morales-Zamora, 914 F.2d 200, 205 (10th Cir. 1990). Neither

_____

[2]However, when an officer while conducting a valid traffic stop asks routine questions about the driver's destination, the purpose of the trip, and so forth, the individual is not legally obligated to answer, may not be compelled to answer, and may not be arrested for refusing to answer. See Terry v. Ohio, 392 U.S. 1, 34 (1968) (White, J., concurring).

Merrett nor Morales-Zamora required the police to have reasonable suspicion that a vehicle was transporting contraband before subjecting it to a canine sniff. Accord United States v. Rodriguez-Morales, 929 F.2d 780, 788-89 (1st Cir. 1991) (dog sniff of impounded vehicle), cert. denied, 502 U.S. 1030 (1992).

Fourth, once Fanta alerted on the exterior of Alexander's trailer, Officer Ward had probable cause to search the trailer's interior without a warrant. See United States v. Bloomfield, 40 F.3d 910, 919 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995); cf. Wyoming v. Houghton, 119 S. Ct. 1297 (1999).

Hemmed in by these established principles regarding traffic stops and canine sniffs, Alexander argues the thirty seconds it took Fanta to circle and alert on the trailer were an unconstitutional detention that tainted the subsequent seizure of the currency. More specifically, he contends that Officer Ward unreasonably extended the valid traffic stop by performing the canine sniff without reasonable suspicion *after* he had decided to return Alexander's travel documents and let Alexander go on his way.

Length of detention is a factor used in analyzing the validity of purely investigative Terry stops -- police officers who detain persons with only reasonable suspicion that criminal activity is afoot must "diligently pursue[] a means of investigation that [is] likely to confirm or dispel their suspicions quickly," or the stop becomes a *de facto* arrest without probable cause. United States v. Sharpe, 470 U.S. 675, 686 (1985). That doctrine does not fit this case. A traffic stop is not investigative; it is a form of arrest, based upon probable cause that a penal law has been violated. Length of detention following an arrest is normally not of judicial concern, provided the arrested person is taken "without unnecessary delay before the nearest available" judicial officer. Fed. R. Crim. P. 5(a); see County of Riverside v. McLaughlin, 500 U.S. 44 (1991). Arrest also justifies investigative procedures that are not allowed in the Terry stop context. For example, police can conduct a more thorough search of the detainee than the limited *weapons* frisk permitted by Terry -- they may search for

-5-

*evidence* of criminal activity, even evidence of a crime other than the crime for which the arrest was made. See United States v. Robinson, 414 U.S. 218 (1973). Recognizing the arrest underpinnings of even routine traffic stops, the Supreme Court has expressly cautioned, "We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a Terry stop." Berkemer v. McCarty, 468 U.S. 420, 439 & n.29 (1984); see also Michigan v. Long, 463 U.S. 1032, 1035 n.1 (1983). Thus, Alexander's contention, though superficially plausible, requires a closer look.

Depending upon state law, some traffic stops justify an immediate full custodial arrest of the offending driver, for example, when a hit-and-run driver is observed speeding from the scene of a fatal accident. Other traffic stops may be routine at the outset but may develop information justifying a custodial traffic arrest, for example, when a traffic offender is found to be drunk or to be operating the vehicle without a valid license. Given the myriad situations in which traffic stops occur, it is not reasonable to subject them to the length-of-detention analysis we use in evaluating investigatory stops. On the other hand, in analyzing constitutional issues arising from traffic stops, the Supreme Court has recognized the brief and routine nature of most of these encounters. For example, though the roadside detention is a seizure for Fourth Amendment purposes, unless the vehicle's occupants are under full custodial arrest, routine questioning does not normally require Miranda warnings. See Berkemer, 468 U.S. at 441-42. And in Knowles v. Iowa, 119 S. Ct. 484, 488 (1998), the Court recently held that a routine traffic stop "does not by itself justify the often considerably greater intrusion attending a full field-type search" incident to an arrest. By declining to apply the search-incident-to-arrest principles of United States v. Robinson, Knowles confirmed that a routine traffic stop is not the equivalent of a full custodial arrest for all constitutional purposes.

Applying the reasoning of Berkemer and Knowles to the issue of unreasonable detention during a traffic stop, we believe the Supreme Court would not closely

examine the time it takes a traffic officer to complete the traffic stop itself, consistent with the discretion given arresting officers in other contexts. But once the officer decides to let a routine traffic offender depart with a ticket, a warning, or an all clear -- a point in time determined, like other Fourth Amendment inquiries, by objective indicia of the officer's intent -- then the Fourth Amendment applies to limit any subsequent detention or search. That is the line we have drawn in prior cases. While the Supreme Court generally eschews line-drawing in Fourth Amendment cases, some such distinction must be made, as it was in Knowles, in order to apply reasonable Fourth Amendment length-of-detention restrictions to routine traffic stops.

Applying the line we have established to this case is not easy. The first question is, when was the traffic stop completed. Normally, a traffic stop cannot end until the police officer has returned the offending driver's license and vehicle registration. But here it is more realistic to conclude the traffic stop was complete when Officer Ward told Alexander his documents would be returned after the canine sniff. Thus, the canine sniff was thirty seconds or two minutes over our line, and it was done without reasonable suspicion to believe there were drugs in this particular vehicle. Does this mean Alexander was unconstitutionally detained? We think not.

In the first place, the line we have drawn is quite artificial. For example, if Officer Ward had been working with a partner who carried out the canine sniff while Ward completed the traffic checks, or if Fanta had been trained to do the sniff by himself while Ward completed those checks, the sniff would have occurred on the traffic stop side of our Fourth Amendment line. Cases like Merrett and Morales-Zamora teach that canine sniffs *during* lawful traffic detentions are not unconstitutional searches or seizures. When the constitutional standard is reasonableness measured by the totality of the circumstances, we should not be governed by artificial distinctions.

More importantly, we conclude that Officer Ward's conduct on the whole was not constitutionally unreasonable. Alexander violated a traffic law and thereby

subjected himself and his vehicle to a period of official detention that might have substantially exceeded the five to eight minutes it took Officer Ward to complete the traffic stop. Viewed in this context, a two-minute canine sniff was a *de minimis* intrusion on Alexander's personal liberty, like routinely ordering a lawfully stopped motorist out of his vehicle to protect officer safety, the practice upheld in Mimms, 434 U.S. at 111. See also Ingraham v. Wright, 430 U.S. 651, 674 (1977). The decision in Mimms turned on the government's strong interest in officer safety. The government likewise has a strong interest in interdicting the flow of illegal drugs along the nation's highways. See Place, 462 U.S. at 703. When applied to the exterior of vehicles, the canine sniff is an investigative procedure uniquely suited to this purpose -- it is so unintrusive as not to be a search, it takes very little time, and it "discloses only the presence or absence of narcotics, a contraband item." Place, 462 U.S. at 707. For these reasons, when a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior.[3]

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The government argues that Officer Ward's actions were validated by consent because Alexander did not object when Ward said that Fanta would sniff the vehicle's exterior, or when Ward said he would search the trailer after Fanta alerted. We disagree. The government "has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 460 U.S. 491, 497 (1983).