# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3378

———————

United States of America,

      Appellee,

v.

James Stephen Alexander, II,

      Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Eastern District of Arkansas.
\*
\*
\*

———————

Submitted: February 15, 2006
Filed: May 15, 2006

———————

Before WOLLMAN, FAGG, and ARNOLD, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

James Stephen Alexander appeals from the district court's[1] denial of his motion to suppress evidence. We affirm.

## I.

At approximately 1:49 p.m. on January 25, 2004, Trooper Kyle Drown, a canine officer with the Arkansas Highway Patrol, stopped Alexander as he was

———————

[1]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

driving an automobile that bore only one of two required California license tags. Drown asked Alexander to sit in his patrol car while Drown checked Alexander's Alabama driver's license. While they were in the patrol car, Drown asked Alexander about the details of his trip. Alexander said he had flown to California on January 22 to purchase the car and was returning home to Alabama. As Drown later testified, he was concerned about conflicts and inconsistencies in Alexander's account of his trip, and he noticed that Alexander appeared nervous and very tired.

At approximately 2:01 p.m., Drown told Alexander that he would give him a written warning. Immediately thereafter, Drown asked Alexander whether there was anything illegal in his car and requested Alexander's consent to search the car. Alexander replied that he did not know of any contraband in his car but that because he had not searched it yet himself, he would not consent to a search. At approximately 2:03 p.m., Drown told Alexander that he was going to conduct an exterior search of the vehicle with his drug dog and that if the dog did not alert, Alexander would be free to go.

Drown conducted the exterior search by leading the dog around the car, whereupon the dog alerted to the odor of narcotics. The entire dog sniff search was completed by approximately 2:05 p.m., four minutes after Drown told Alexander that he would be given a warning ticket and sixteen minutes after the traffic stop commenced.

During their subsequent search of the car's interior, Drown and his fellow officer found several duct-taped packages containing methamphetamine and placed Alexander under arrest. Following the district court's denial of his motion to suppress, Alexander entered a conditional guilty plea to one count of possession with intent to distribute more than 500 grams of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The district

court sentenced Alexander to eighty-seven months' imprisonment and five years' supervised release.

## II.

A canine sniff of the exterior of a car conducted during a traffic stop that is lawful at its inception and otherwise executed in a reasonable matter does not infringe upon a constitutionally protected interest in privacy. United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005). Such a dog sniff may be the product of an unconstitutional seizure, however, if the traffic stop is unreasonably prolonged before the dog is employed. Illinois v. Caballes, 543 U.S. 405, 407 (2005); Martin, 411 F.3d at 1002. Once an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search. United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 648 (8th Cir. 1999). We recognize, however, that this dividing line is artificial and that dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimis* intrusions on the defendant's Fourth Amendment rights. Id. at 649; see also Martin, 411 F.3d at 1002.

Although Alexander concedes that the traffic stop was based on probable cause, he argues that his Fourth Amendment rights were violated because the traffic stop concluded at the point he was notified that he would receive a warning ticket, he did not consent to the dog sniff, and no reasonable suspicion existed to further detain him. We need not determine the exact point at which the traffic stop concluded, however, or whether reasonable suspicion existed to continue to detain Alexander. Even if the lawfully initiated traffic stop terminated at the point at which Trooper Drown told Alexander that he would receive only a warning, our decisions in $404,905.00 and Martin compel the conclusion that the subsequently conducted dog sniff was a *de minimis* intrusion on Alexander's Fourth Amendment rights.

-3-

In $404,905.00, we upheld as constitutional a dog sniff that was performed two minutes after the traffic stop had technically ended, observing that "[w]hen the constitutional standard is reasonableness measured by the totality of the circumstances, we should not be governed by artificial distinctions." 182 F.3d at 649. We concluded that "when a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigative procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." Id.

In Martin, an officer stopped the defendant for driving with a defective brake light and cited him for driving without a driver's license. 411 F.3d at 1000. After issuing the citation, the officer continued to speak with the defendant, asking him about the contents of the vehicle. Id. After the defendant became noticeably nervous, the officer requested consent to search the vehicle, which the defendant refused. Id. The officer then conducted an exterior search of the vehicle with a drug dog, which resulted in the discovery and seizure of drugs. We affirmed the district court's denial of a motion to suppress, citing $404,905.00 for the proposition that "even if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two minute delay to conduct a canine sniff is a *de minimis* intrusion on the driver's personal liberty that does not violate the Fourth Amendment." Martin, 411 F.3d at 1002.

At most, Alexander's detention was extended some four minutes from the point at which he was notified that he would receive a warning ticket to the point at which the dog sniff was completed. Alexander contends that we should consider overruling $404,905.00 and Martin because they are in conflict with the Supreme Court's decision in Caballes. Putting aside the fact that we are not free to reconsider the decisions of other panels of this court, we see no inconsistency between Caballes and those two cases. Because the parties agreed in Caballes that the dog sniff occurred

during a legitimate traffic stop, the Court was not called upon to address the question of the length of time that a dog sniff can constitutionally be conducted following the conclusion of a legitimate stop. 543 U.S. at 407. Moreover, the Court noted that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise conducted in a reasonable manner." Id. at 408. It is precisely this reasonableness inquiry that led us to recognize in $404,905.00 that the artificial line marking the end of a traffic stop does not foreclose the momentary extension of the detention for the purpose of conducting a canine sniff of the vehicle's exterior. 182 F.3d at 649.

Because the dog sniff was legal, the resulting search of Alexander's car was also legal, for the dog's identification of drugs in Alexander's car provided probable cause that drugs were present, which entitled the officers to search the vehicle forthwith pursuant to the automobile exception to the warrant requirement. United States v. Sanchez, 417 F.3d 971, 976 (8th Cir. 2005).

The judgment is affirmed.

_____