Eddie HUGUELEY and, Connie
Hugueley, Plaintiffs,

v.

DRESDEN POLICE DEPARTMENT,
et al., Defendants.

No. 05–1348–T–AN.

United States District Court,
W.D. Tennessee,
Eastern Division.

Jan. 12, 2007.

Dale Conder, Jr., of Rainey, Kizer, Reviere & Bell, PLC, Jackson, TN, for Defendant Clay Anderson.

Fred Collins, Milan, TN, for Defendant Lofton.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

TODD, District Judge.

### I. Factual Background

This case involves the constitutionality of a traffic stop, dog-sniff, and subsequent search of a motor vehicle which resulted in the discovery of Methamphetamine and other drug paraphernalia. On May 21, 2004, Defendant, William Lofton [1] ("Lofton"), a police officer with the Dresden Police Department, was on duty in his patrol car when he observed a vehicle traveling in excess of the posted forty-five mile per hour speed limit. He also observed that neither the driver nor the passenger were wearing their seatbelts. Plaintiff, Eddie Hugueley ("Hugueley"), was the driver of the 1995 Nissan Maxima, and his wife, Connie Hugueley, was the only passenger.

Officer Lofton activated his blue lights and proceeded to pull-over Hugueley for speeding and for a seatbelt violation. [2] Officer Lofton also radioed Defendant, Clay Anderson ("Anderson"), also a police officer with the Dresden Police Department, to assist him with the stop. Officer Anderson arrived shortly thereafter with Rocky, a certified narcotics dog trained to detect the presence of illegal drugs by sniffing the exterior of a motor vehicle. With the vehicle stopped on the shoulder of the road, officer Lofton approached Hugueley's vehicle and requested his driver's license and vehicle registration. Officer Lofton also asked Hugueley to exit the vehicle in order that officer Lofton could explain to Hugueley why he had been stopped. According to Hugueley, officer Lofton then told him he was free to leave. It is unclear whether officer Lofton issued Hugueley a citation.

As Hugueley walked back to his vehicle, officer Anderson informed him of his intent to perform a dog-sniff on the vehicle. Although Hugueley did not consent to the procedure, officer Anderson proceeded to

---

1. There appears to be some confusion as to whether Defendant's name is "Lofton" or "Loflin." Because the complaint refers to Defendant William Lofton, the Court will use that spelling of Defendant's name.

2. Under Tennessee law, it is illegal to operate a motor vehicle while either the driver or passengers are not seat belted. "No person shall operate a passenger motor vehicle on any highway ... in [Tennessee] unless such person and all passengers four (4) years of age or older are restrained by a safety belt at all times the vehicle is in forward motion." TENN. CODE ANN. § 55–9–603(a)(1)(2006).

walk Rocky "to the trunk of the car where Eddie Hugueley and Mr. William Lofton[sic] were standing. Then down the passenger side of the car .... Then Mr. Clay Anderson brought his K9 dog back down the passenger's side again ...." (Pl.'s Compl., 4, Dkt. # 1, Nov. 14, 2005). For purposes of this motion, the Court assumes that the dog-sniff began after the completion of the traffic stop. The dog alerted to the presence of drugs on the passenger's side of the vehicle within two and one-half minutes, at which time officer Anderson and officer Lofton performed a full search of the vehicle. The search revealed an undisclosed amount of Methamphetamine, along with other drug paraphernalia. On September 28, 2006, a grand jury indicted Hugueley for various drug related offenses in violation of Tennessee state law.

On November 14, 2006, Eddie Hugueley and Connie Hugueley[3] filed this civil action against officers Lofton, Anderson, and Jason Percy in their individual and official capacities, and against the Dresden Police Department and the Weakley County Sheriff's Department, pursuant to 42 U.S.C. § 1983, alleging violations of their Fourth[4], Eighth, and Fourteenth Amendment rights. Plaintiffs also stated claims for assault and battery under Tennessee law. Since the initial filing of the complaint, many of Plaintiff's claims have been dismissed. The parties have stipulated that the only remaining claim, which is the subject of the instant motion for summary judgment, is Plaintiff's Fourth Amendment claim against officer Anderson and officer Lofton in their individual capacities. (*See* Status Rpt., 2, Dkt. # 30, Sept. 29, 2006).

On October 13, 2006, officer Anderson filed a motion for summary judgment. On November 1, 2006, officer Lofton filed a motion for summary judgment, incorporating by reference many of officer Anderson's Fourth Amendment arguments. Plaintiff, who is representing himself in this matter, did not file a response. For the reasons set forth below, Defendants' motions for summary judgment are hereby GRANTED.

## II. Summary Judgment Standard

Motions for summary judgment are governed by Fed.R.Civ.P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

"If the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, ... [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*,

---

3. Connie Hugueley is no longer a party to this action.

4. Plaintiff's complaint does not specifically mention the Fourth Amendment. However, Plaintiff's allegation that Defendants' search and continued detention of his vehicle were unreasonable clearly invokes the protections of the Fourth Amendment.

*Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. 2505. Rather, "[t]he inquiry on a summary judgment motion ... is ... 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (*quoting Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If, as here, a party does not respond to a motion for summary judgment, the Federal Rules of Civil Procedure provide that "summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). The fact that Plaintiff did not respond does not require granting Defendants' motions. However, if the allegations of the complaint are contravened by Defendants' evidence and Defendants are entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir.1979).

## III. Analysis

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006) (*citing West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). There

is no dispute that the second prong is satisfied. Accordingly, the Court must determine whether there is a factual dispute regarding whether Defendants violated Plaintiff's Fourth Amendment right to free from unreasonable searches and seizures.

### 1. Fourth Amendment

#### A. Did the Officers Use of a Drug–Sniffing Dog Constitute a Search?

■ Plaintiff claims that Defendants' use of a drug-dog to sniff the exterior of his vehicle constituted an unreasonable search because Hugueley did not consent to the procedure. (*See* Status Rpt., 2, Dkt. # 30, Sept. 29, 2006). Defendants move for summary judgment on the ground that their use of a well-trained narcotics dog to sniff the exterior of Plaintiff's vehicle was not even a "search" within the meaning of the Fourth Amendment as a matter of law and, therefore, no consent was required.

■ The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. amend. IV. A search of property occurs only when one's reasonable expectation of privacy is infringed. *United States v. Perez*, 440 F.3d 363, 374 (6th Cir.2006) (*citing United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Conversely, "[o]fficial conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (internal quotation marks omitted). In *Caballes*, the Supreme Court held that "the use of a well-trained narcotics detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view—during a

lawful traffic stop, generally does not implicate legitimate privacy interests." *Id.* at 409, 125 S.Ct. 834 (internal quotation marks and citations omitted). Thus, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 410. Both the Supreme Court and the Sixth Circuit have repeatedly reaffirmed this principle. *See Indianapolis v. Edmond,* 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (dog-sniff around exterior of each car at checkpoint is not a search); *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (canine sniff of defendant's luggage by well-trained narcotics detection dog did not constitute a "search"); *United States v. Davis,* 430 F.3d 345, 355 (use of drug-sniffing dog did not encroach upon defendant's reasonable expectation of privacy).

In this case, Defendants offered testimony that the police dog "had been certified and trained to perform drug sniffs on automobiles," and that "Anderson walked his drug dog down the passenger side of the car and he advised that the dog had alerted to the presence of drugs." (Aff. Anderson, 2, ¶ 3, Dkt. # 31–4, Oct. 13, 2006; Aff. Lofton, 2, ¶ 8, Dkt. # 36–3, Nov. 1, 2006). Plaintiff's complaint does not contravene the officers' testimony. Neither has Plaintiff provided any evidence to the contrary. Based upon well-settled precedent, there is no genuine issue of fact that the dog-sniff of the exterior of Plaintiff's vehicle by a trained and certified narcotics-detection dog did not constitute a "search" within the meaning of the Fourth Amendment. This conclusion vitiated any requirement that the officers obtain consent before performing the dog-sniff. Therefore, Defendants' non-consensual use of the dog to sniff the exterior of Plaintiff's vehicle did not violate Plaintiff's Fourth Amendment right to be free from unreasonable searches.

*B. Did Plaintiff's Detention Following the Traffic Stop Constitute an Unreasonable Seizure?*

█ Plaintiff also apparently claims that his continued detention following the traffic stop while the officers performed a dog-sniff transformed what began as a lawful traffic stop into an unreasonable seizure in violation of Plaintiff's Fourth Amendment rights. Defendants move for summary judgment on the ground that Plaintiff's brief detention following the traffic stop was *de minimis* and, therefore, did not constitute an unreasonable seizure in violation of the Fourth Amendment.

There is no question that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *Perez,* 440 F.3d at 369 (*quoting Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "The dual inquiry for evaluating the reasonableness of an investigative stop requires examination of 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (*quoting Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Although Plaintiff does not necessarily challenge the validity of the initial stop, the Court will briefly address this issue before it addresses the validity of the subsequent detention and dog-sniff. An officer may lawfully stop a vehicle so long as he has probable cause to believe that a traffic violation has occurred. *United States v. Hill,* 195 F.3d 258, 264 (6th Cir.

1999). "Police officers may, consistent with the Fourth Amendment's requirements, stop vehicles for observed violations of traffic laws." *United States v. Castro–Perez*, 113 Fed.Appx. 92, 93 (6th Cir.2004). In this case, Plaintiff does not dispute that Officer Lofton had probable cause to stop him. Officer Lofton testified that he personally observed Hugueley exceeding the speed limit and operating his motor vehicle without his seat belt fastened, in violation of Tennessee law.

■■■ In turning to the crux of Plaintiff's Fourth Amendment claim, which challenges the validity of the detention and dog-sniff following the traffic stop, the Court begins its analysis by echoing the Supreme Court's mandate that "reasonableness" be the "touchstone" of Fourth Amendment analysis. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (emphasis added). "The second part of the *Terry* inquiry examines whether the stop was 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Perez*, 440 F.3d at 372 (*quoting Terry*, 392 U.S. at 20, 88 S.Ct. 1868). "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* (*quoting Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Thus, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407, 125 S.Ct. 834. "Once an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search." *United States v. Alexander*, 448 F.3d 1014, 1016 (8th Cir.2006). "[A] dog sniff may be the product of an unconstitutional seizure ... if the traffic stop is unreasonably prolonged before the dog is employed." *Id.* However, "this dividing line is artificial and [ ] dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimis* intrusions on the defendant's Fourth Amendment rights." *Id.* (dog sniff lasting four minutes beyond completion of traffic stop was not an unreasonable seizure). "[E]ven if a dog sniff is thirty seconds to two minutes over the line drawn at the end of a routine traffic stop, a two-minute delay to conduct a canine sniff is a *de minimis* intrusion on the driver's personal liberty that does not violate the Fourth Amendment." *United States v. Martin*, 411 F.3d 998, 1002 (8th Cir.2005) (dog sniff lasting two minutes after delivery of citation was not an unreasonable seizure). "[W]hen a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigation procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior." *United States v. $404,905.00 in United States Currency*, 182 F.3d 643, 649 (8th Cir.1999) (dog sniff lasting two minutes after completion of license and vehicle checks did not violate Fourth Amendment).

The principle that a *de minimis* extension of a traffic stop in order to perform a dog-sniff does not rise to the level of a constitutional violation is based upon the Supreme Court's directive that "the touchstone of the Fourth Amendment [be] *reasonableness*," which "is measured in objective terms by examining the totality of the circumstances." *Robinette*, 519 U.S. at 39, 117 S.Ct. 417 (emphasis added). *See also United States v. Guimond*, 116 F.3d 166, 170 (1997) (In *Robinette*, "the Supreme

 

Court reaffirmed the longstanding view that analysis under the Fourth Amendment must focus on the overall reasonableness of the police officer's actions, and that it is improper to distill the reasonableness inquiry into a bright-line rule, in recognition of the endless variations in the facts and circumstances implicating the Fourth Amendment.") (internal quotation marks omitted).

The uncontroverted facts and circumstances of this case show that officer Anderson arrived on the scene before officer Lofton had completed the traffic stop, indicating that the dog was at the officers' immediate disposal during the traffic stop and that Plaintiff did not have to wait for the dog's arrival. However, the dog-sniff did not begin until after the completion of the traffic stop, as Plaintiff was returning to his vehicle. Nevertheless, Plaintiff himself conceded that the dog alerted to the presence of drugs in the period of time it took to walk the dog from the back of the car to the front of the car and back down the passenger side again, which officer Anderson testified was a period of no more than two and one-half minutes. Based upon the specific facts of this case, Plaintiff's two and one-half minute detention following the traffic stop while officer Anderson conducted a dog-sniff on the exterior of his vehicle was *de minimis,* and it did not convert the valid traffic stop into an unreasonable seizure in violation of the Fourth Amendment.

Because the Court has determined that Defendants did not violate Plaintiff's Fourth Amendment rights as a matter of law, the Court need not address Defendants' qualified immunity argument. The Court also declines to address Defendant Lofton's argument that because he "did not use or participate in the use of the dog to sniff the exterior of the car and he was not Defendant Anderson's supervisor, he cannot be held liable for the alleged unreasonable search...." (Def. Lofton's Mot. Summ. J., 6–7, Dkt. # 36, Nov. 1, 2006).

### IV. Conclusion

For all the aforementioned reasons, Defendants' motions for summary judgment as to Plaintiff's Fourth Amendment claim pursuant to 42 U.S.C. § 1983 are hereby GRANTED. Plaintiff has no remaining claims and his case is hereby DISMISSED.