COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


LARMONT D. BOOKER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1165-07-1                      JUDGE JAMES W. HALEY, JR.
                                                        JULY 22, 2008

COMMONWEALTH OF VIRGINIA



            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                         Dean W. Sword, Jr., Judge

            Brenda C. Spry, Deputy Public Defender (Office of the Public
            Defender, on brief), for appellant.

            Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on brief), for appellee.


        Larmont D. Booker ("Booker") was convicted after a bench trial of possession of a

controlled drug in violation of Code § 18.2-250.[1]  Booker contends that the trial court erred in

denying his motion to suppress evidence obtained as the result of a delayed investigative

detention.  We affirm.

                                  STATEMENT OF FACTS

        The relevant facts may be succinctly stated.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The Court notes that the sentencing order erroneously reflects that appellant was found
guilty of possession of cocaine.  However, as appellant was found guilty of possession of heroin,
this matter is remanded to the trial court for the sole purpose of correcting that clerical error to
reflect that appellant was convicted of possession of heroin.

Officer W.J. Baker, of the Portsmouth Police Department, served as a community service officer in, and agent for, several public housing projects, including one designated PRHA.[2] PRHA was a "high crime/high drug" area, where there had been "hundreds of arrests."

At approximately 12:55 p.m. on August 21, 2006, Baker, in uniform and on-duty, saw Booker and a Ms. McKinney sitting in a car parked on PRHA property. In his capacities, Baker knew the residents of PRHA and testified: "They were not residents of the property." He further knew Booker from "prior contacts" and specifically was aware Booker did not live in PRHA.

Baker approached the car and Booker, the front seat passenger, attempted to leave. Baker asked him to remain in the car. After ascertaining the names of the occupants, Baker ran a VCIN and DMV check which was returned negative as to each. The time from learning their names and completing the check lasted: "Maybe a minute, because I have got a computer in my car."

Upon returning to the car, Baker asked Ms. McKinney for permission to search her car.

> A: and she said yes.
>
> Q: And then you had Mr. Booker exit the vehicle at that point . . . .
>
> A: Yes. I had Mr. Booker come to the back of the vehicle where Officer Sjoberg[3] was.
>
> Q: So, you directed him to do that, to come to the back of the vehicle and wait with Officer Sjoberg?
>
> A: Yes. I asked him to step behind the vehicle and just stand up there with the officer.

The search of Ms. McKinney's car recovered three syringes and a spoon with heroin residue lying on the floorboard of the driver's front seat. Both Ms. McKinney and Booker were arrested. Baker testified that it was a "couple of minutes" between the time he had Booker exit

---

[2] The record is not clear on the point, but PRHA apparently stands for Portsmouth Residential Housing Authority.

[3] Sjoberg had arrived at the scene as a backup officer.

the vehicle and Booker's arrest, the search intervening. A search of Booker following his arrest disclosed five capsules of heroin.

Booker was indicted for possession of heroin with intent to distribute, a third or subsequent offense. After a bench trial, Booker's motion to reduce the charge to possession of heroin was granted and he was convicted of that offense.

A motion to suppress was heard during the bench trial. Booker argued to the trial court: "after Mr. Booker is run for warrants, and he comes back negative, at that point the basis for Mr. Booker's detention ceases to exist. Either the officer can go ahead and charge him with the trespass issue and the summons is required or let him go."

## ANALYSIS

On brief, Booker argues that Officer Baker did not have a reasonable, articulable suspicion that he was trespassing at the time Officer Baker detained Booker and Ms. McKinney. However, Booker did not make this argument to the trial court. In his motion to suppress, the only argument he made in support of his motion was not that the initial detention was illegal, but that Officer Baker should have released him when he discovered that there was no warrant for his arrest. Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling."

Because Booker did not dispute the matter in his motion to suppress, we must assume that Officer Baker had a reasonable suspicion, or "basis," for an investigatory detention, i.e. that his suspicion that Booker, as a non-resident, was trespassing on PRHA property was reasonable. Reaching the sole reason set forth in the motion to suppress, we must also assume that the detention properly extended until, after the record check, Baker returned to the vehicle.

Booker has never disputed that there existed probable cause for his arrest once the drugs were discovered in the vehicle and that the five heroin capsules subsequently discovered on his person were the result of a permissible search following that arrest. Rather, Booker argues that the investigatory detention was unconstitutionally extended for the "couple of minutes" that intervened following his being directed to exit the car and stand at its rear, and the discovery of the syringes and the spoon with heroin residue in the car. It is this contention, therefore, that we address.

In reviewing a trial court's denial of a motion to suppress, we consider the evidence in the light most favorable to the Commonwealth. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc). "[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." King v. Commonwealth, 49 Va. App. 717, 721, 644 S.E.2d 391, 393 (2007) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)).

After a police officer has lawfully stopped a motor vehicle, the officer may, as a matter of course, order the driver to exit the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). The United States Supreme Court later extended the Mimms rule to apply to the passengers of a lawfully stopped motor vehicle. Maryland v. Wilson, 519 U.S. 408, 410 (1997). Booker and Ms. McKinney were the occupants of a vehicle when Officer Baker detained them. Because Booker did not dispute the initial detention at trial, we must assume that Ms. McKinney's vehicle was lawfully stopped. See McLellan v. Commonwealth, 37 Va. App. 144, 155 n.2, 554 S.E.2d 699, 704 n.2 (2001). Therefore, according to the rule announced in Wilson, Officer Baker did not violate the Fourth Amendment when he ordered Booker out of the vehicle.

The recognition that Officer Baker was allowed to order Booker out of the vehicle during his investigation leaves us to answer a related question. Was it reasonable for Officer Baker to

order Booker to exit the vehicle and *wait* next to Officer Sjoberg for a few minutes while Officer Baker searched the vehicle?  We believe that it was.

Courts have considered the extension of investigative detentions for similar lengths of time when the purpose of the extended detention was that police would arrange for the investigation of the exterior of the vehicle by drug-sniffing dogs.  These courts have held this represents a *de minimus* extension of an otherwise valid search and is permissible under the Fourth Amendment.  In <u>United States v. Alexander</u>, 448 F.3d 1014, 1015-16 (8th Cir. 2006), a police officer told a driver he would issue a written warning, but then extended the stop by searching the exterior of the car with a dog.  The time from when the officer told the driver about the warning to the completion of the search was only four minutes.  <u>Id.</u>  The court noted that the Fourth Amendment limits searches unrelated to suspicious activity.  <u>Id.</u> at 1016.  "We recognize, however, that this dividing line is artificial and that dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only *de minimis* intrusions on the defendant's Fourth Amendment rights."  <u>Id.</u>  The court found that even if the stop ended when the officer stated a warning would be given, the momentary extension for the dog sniff was permissible.  <u>Id.</u>; <u>see</u> <u>also</u> <u>State v. Griffin</u>, 949 So. 2d 309, 314-15 (Fla. Dist. Ct. App. 2007) (citing <u>Alexander</u> and holding that "any intrusion into Appellee's liberty interests . . . was *de minimus*, and, therefore, not unconstitutional").

Any violation of Booker's rights in this case was *de minimus*.  That the initial detention was valid is not contested.  Only a couple of minutes elapsed between the time Officer Baker asked Booker to wait behind the car and Booker's admittedly lawful arrest.  Officer Baker's extension of the detention was no longer than the time interval held to be *de minimis* by the courts in <u>Griffin</u> and <u>Alexander</u>.

Moreover, according to Williams v. State, 640 So. 2d 1206 (Fla. Dist. Ct. App. 1994), a decision of the Court of Appeals of Florida, the relationship between the alleged illegal detention and the discovery of drugs was attenuated by intervening events that make application of the exclusionary rule to this case inappropriate. In Williams, police stopped the vehicle in which the defendant was a backseat passenger because the vehicle's right taillight was inoperable. Id. at 1208. A police officer observed what he suspected was a vial of cocaine in the shoe of the front seat passenger, who then fled on foot. Id. at 1207. Before pursuing the front seat passenger, the police ordered the defendant, the driver of the car, and another backseat passenger to remain in the vehicle even though they had no reason to believe that the defendant had committed any crime. Id. When the police returned from their unsuccessful attempt to pursue the front seat passenger, approximately three to five minutes later, they received the consent of the driver to search the car and removed the defendant and the other backseat passenger from the car before proceeding with their search. Id. During this search, the police found marijuana stems and seeds in the backseat of the car where the defendant had been sitting. Id. The court held that the defendant's motion to suppress was properly denied even if the extension of his detention caused by the police pursuit of the front seat passenger and the consent search were unlawful. Id. at 1209.

> Moreover, assuming the unlawfulness of Williams' initial detention when the passenger fled and assuming that cocaine was found on his person at the jail we would still conclude that the trial court was correct in refusing to suppress the cocaine. The law does not require the strict application of a "but for" test when considering the "fruit of the poisonous tree" doctrine under the exclusionary rule. Instead, the focus is on whether evidence has been illegally derived by exploitation of initial police misconduct. Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). In this case, the subsequent, intervening events of the driver's valid consent to search the car, followed by the lawful discovery of marijuana that resulted in Williams' continued detention and immediate arrest for possession of that marijuana, would have been sufficient to establish that any

> contraband allegedly found on his person at the jail was not procured by exploitation of his initial detention after the passenger fled but, instead, was sufficiently distinguishable to be purged of any primary taint. Wong Sun; Sheff v. State, 301 So. 2d 13 (Fla. 1st DCA 1974), aff'd, 329 So. 2d 270 (Fla. 1976). Cf. State v. Taylor, 557 So. 2d 941, 942 (Fla. 2d DCA 1990) ("Intervening misconduct would have served to dissipate any taint from a pretextual stop, assuming that to have been the case.").

Id. The consent of the driver to a search of the vehicle and the discovery of drugs during that search were the "intervening events" that the Williams court decided purged "any primary taint" associated with the defendant's extended detention. Substantially similar events intervened between the time of the detention that Booker challenges and the discovery of drugs on Booker's person.

Even if a *de minimis* extension of Booker's original detention required some justification, no evidence suggests the officers' reasons for detaining Booker ceased to exist immediately after checking Booker's criminal record. An individual reasonably suspected of trespassing may be asked "who he was, where he was going and whether he carried drugs or weapons." Langston v. Commonwealth, 28 Va. App. 276, 284-85, 504 S.E.2d 380, 384-85 (1998). Doing so does not render the investigatory detention invalid. To be sure, an individual's illegal presence might be indicative of an illegal purpose, and vice versa. An extension of the duration of the detention "to quickly confirm or dispel that suspicion," Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001) (citation omitted), cannot be deemed unreasonable under the Fourth Amendment.

We, therefore, hold that trial court did not err in rejecting Booker's only argument in support of his motion to suppress.

Affirmed.