# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Commonwealth of Virginia

v.

John Edward McLean

November 6, 2014

Case No. (Criminal) CR14-884

By JUDGE JOHN W. BROWN

This matter is before the Court on the defendant's motion to suppress evidence seized following the traffic stop of a vehicle in which he was a passenger. For the reasons that follow, the Court denies the defendant's motion to suppress.

*Factual Background*

While patrolling "an area known for drugs" on November 1, 2013, Officer Barrett Ring initiated a traffic stop at 12:07 a.m. of a vehicle in which the defendant was riding as a passenger. The defendant concedes the validity of the stop. As Officer Ring approached the vehicle, he noticed that the defendant "reached forward as if he was reaching underneath the seat and then came back up and reached over towards his left hip." After Officer Ring observed this movement, he made contact with the driver and requested that Officer James Duncan respond with his canine partner, Boomer. Officer Ring subsequently conducted VCIN and NCIC checks on both occupants of the vehicle and began writing a traffic summons for the driver. The VCIN and NCIC checks revealed the defendant's felony narcotics history.

Officer Duncan and canine Boomer arrived at 12:19 a.m., while Officer Ring was writing the summons for the driver of the vehicle. Officer Ring testified that he had just completed writing the summons when Officer Duncan spoke to the driver regarding the walk-around that was about to occur.

Boomer twice alerted at the passenger door handle and the officers found a .38 revolver under the passenger seat, where the defendant had been seated. A subsequent search of the vehicle revealed a backpack in

the back seat, which contained, among other things, the defendant's birth certificate, some barbering materials, plastic bags, a digital scale containing white powder residue, and green, leafy plant material.

Upon conclusion of the search, Officer Ring provided a copy of the summons to the driver, Wendy Saunders. Officer Duncan testified that the entire process of searching a vehicle with Boomer, including his explanation of the search, takes three or four minutes.

### Analysis

The defendant argues that the evidence seized should be suppressed because the Chesapeake Police exceeded the permissible scope of a lawful traffic stop in conducting a canine sniff without reasonable articulable suspicion of criminal activity. He relies on the "prolongation principle" discussed in *United States v. DiGiovanni*, 650 F.3d 498 (4th Cir. 2011), which required that detention of the vehicle (and the defendant) cease at the moment the traffic investigation ended. The search and subsequent seizure in this case, he argues, should be suppressed in that the walk around by the canine officer and his dog began after the traffic officer had finished running his checks and had completed the traffic summons. The traffic officer held the ticket until after the canine officer explained his purpose and the dog had completed his sniff.

The Commonwealth responds that the brief extension of the traffic stop did not violate the defendant's Fourth Amendment rights so as to warrant suppression, in that the additional detention was *de minimis* under the totality of the circumstances. The Fourth Circuit Court of Appeals has held that a four-minute extension of a traffic stop to conduct a canine sniff is *de minimis* and reasonable, the Commonwealth asserts, citing *United States v. Green*, 740 F.3d 275 (4th Cir. 2014).

"[A] dog sniff conducted during a traffic stop that is 'lawful at its inception and otherwise executed in a reasonable manner' does not infringe upon a constitutionally protected interest in privacy." *United States v. Martin*, 411 F.3d 998, 1002 (8th Cir. 2005) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). "A brief delay to employ a dog does not unreasonably prolong the stop, however, and we have repeatedly upheld dog sniffs that were conducted minutes after the traffic stop concluded." *United States v. Rodriguez*, 741 F.3d 905, 907 (8th Cir. 2014) (citing *United States v. Alexander*, 448 F.3d 1014, 1017 (8th Cir. 2006) (four-minute delay *de minimis* intrusion on personal liberty); *United States v. Martin*, 411 F.3d 998, 1002 (8th Cir. 2005) (two-minute delay); *United States v. Morgan*, 270 F.3d 625, 632 (8th Cir. 2001) (delay of "well under ten minutes"); *United States v. $404,905.00 in United States Currency*, 182 F.3d 643, 649 (8th Cir. 1999) (two-minute delay)). To determine whether a delay was *de minimis*, a reviewing court must consider the totality of the circumstances. *See, e.g.*,

*United States v. Mason*, 628 F.3d 123, 132 (4th Cir. 2010); *United States v. Farrior*, 535 F.3d 210, 219–20 (4th Cir. 2008).

Although there are no binding Virginia authorities directly on point, in a case addressing the amount of time officers may order a passenger to exit a vehicle in order to conduct a search, the Court of Appeals of Virginia cited with approval an Eighth Circuit Court of Appeals canine sniff case. *Booker v. Commonwealth*, 2008 Va. App. LEXIS 338, at \*7 (2008) (unpublished opinion) (citing *United States v. Alexander*, 448 F.3d 1014 (8th Cir 2006)). The *Alexander* Court found that a four-minute extension of a traffic stop to conduct a canine sniff represented a *de minimis* intrusion on the defendant's Fourth Amendment rights. 448 F.3d at 1015–16. Likewise, the Court of Appeals of Virginia found that, because Booker was forced to wait "only a couple of minutes," the deprivation of his personal liberty was *de minimis* and not unconstitutional. *Booker*, 2008 Va. App. LEXIS 338, at \*8.

*United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014), is furthermore relevant to the Court's inquiry in the case at bar. The Fourth Circuit, in *Green*, addressed a traffic stop of fourteen minutes and found that a four-minute delay to obtain the defendant's criminal history and conduct a canine sniff constituted a *de minimis* intrusion on the defendant's liberty and not violative of his Fourth Amendment rights. *Id.* at 280.

The defendant's reliance upon *DiGiovanni* is misplaced. Although that case did consider *de minimis* intrusions on personal liberty and the "prolongation principle," the Fourth Circuit Court of Appeals declined to apply these principles where the police officer asked numerous questions pertaining to an unrelated narcotics investigation during of a traffic stop. *DiGiovanni*, 650 F.3d at 509–10 (holding that the police officer "failed to diligently pursue the purposes of the stop and embarked on a sustained course of investigation into the presence of drugs in the car that constituted the bulk of the encounter"; the detention was not *de minimis*). Importantly, the Court eschewed adopting a bright line rule with respect to the maximum number of minutes permissible for a routine traffic stop. *Id.* at 510–11.

In the instant case, the stop was only extended by three to four minutes, a clear *de minimis* extension. While this Court is aware that the Supreme Court of the United States recently granted certiorari on the issue of *de minimis* extensions for dog sniffs, for the time being, the doctrine is alive and well. *Rodriguez v. United States*, 2014 U.S. LEXIS 4905 (Oct. 2, 2014) (granting certiorari to Eighth Circuit decision that held a seven to eight minute extension of a traffic stop for a dog sniff *de minimis*). This Court further notes that the quantum of extension[1] at issue in the instant case does not approach the extensions respectively ruled reasonable and unreasonable by the Eighth Circuit Court of Appeals and Supreme Court of Nevada. *See Rodriguez*, 741 F.3d at 907 (seven-to-eight minute delay *de minimis*); *State*

---

[1]    The evidence is that this time period was no more than four minutes in length.

*v. Beckman*, 305 P.3d 912, 919–20 (Nev. 2013) (nine minute extension, effectively doubling the length of the stop not *de minimis*). Accordingly, the Court denies the defendant's motion to suppress.

Regarding the Commonwealth's argument pertaining to the existence of reasonable articulable suspicion to extend the traffic stop, the Court notes the furtive movements of the defendant,[2] the "high crime" area in which the stop occurred,[3] and the defendant's criminal record,[4] which was known to the officers as supportive of reasonable, articulable suspicion of criminal activity. *See, e.g., Jones v. Commonwealth*, 46 Va. App. 713, 720 (2005) ("Although suspicion of narcotics possession and distribution is not universally recognized as a circumstance which, standing alone, gives rise to an inference of dangerousness, we believe that the better view is that it does." (quoting *Williams v. Commonwealth*, 4 Va. App. 53, 67 (1987))). However, because the Court finds that the delay required to conduct the canine sniff was *de minimis*, we need not address in detail the existence of reasonable, articulable suspicion.

---

[2] *Beasley v. Commonwealth*, 60 Va. App. 381, 397 (2012) (furtive gestures are often "suggestive of possession of illegal drugs, a concealed firearm, or both").

[3] *Whitaker v. Commonwealth*, 279 Va. 268, 276 (2010) ("[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration in a *Terry* analysis.").

[4] *See Commonwealth v. Smith*, 281 Va. 582, 591 (2011) ("In the context of a traffic stop in which multiple individuals were present in the vehicle, the officer's knowledge of the driver's, or the occupants', prior criminal history is highly relevant in determining whether the officer had reasonable suspicion to conduct a pat down for his or her safety, particularly when that prior criminal history included weapons and dangerous narcotics violations.").