# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1010

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Victor Pena-Ponce, a/k/a | * | |
| Ramiro Prado-Diaz, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: November 25, 2009

_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL,[1] District Judge.

_____

BENTON, Circuit Judge.

Victor Pena-Ponce pled guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2. In his plea agreement, Pena-Ponce reserved his right to appeal the denial of his motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

---

[1] The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

On March 12, 2007, county Deputy Scott Faiferlick saw a hatchback vehicle following too closely to a Ford Ranger on Interstate 80 in Iowa. Deputy Faiferlick stopped the hatchback. He radioed other officers to watch for the Ranger because he believed the two vehicles were traveling together and the Ranger had only a temporary registration tag.

Officer Robert Weir spotted the Ranger. He drove alongside, could not read the expiration date on the Ranger's temporary tag, but saw what he thought was excessive tint on the windows. Officer Weir stopped the Ranger. The stop was videotaped by a camera in the police car, and audio-recorded by a microphone on the officer.

Pena-Ponce was driving the Ranger, accompanied by a passenger. Officer Weir asked Pena-Ponce some questions, including ones about the expiration date of the tag and his destination. Pena-Ponce responded that he did not understand too much English. Both Officer Weir and Pena-Ponce repeated each other's questions and answers. Officer Weir asked no questions about the tinted windows. He obtained the vehicle registration, Pena-Ponce's Washington state driver's license, a temporary Illinois insurance card, and the passenger's Mexican passport. He learned that the passenger was married to Pena-Ponce's sister; they were coming from Lincoln, Nebraska, after visiting some girls; and they were traveling to Chicago, where Pena-Ponce lived and worked. The entire conversation lasted less than three minutes.

Officer Weir returned to his vehicle with the documents and relayed all the details to Deputy Faiferlick by radio. Officer Weir added that "things could be all screwy here."

Re-approaching the Ranger, Officer Weir directed Pena-Ponce to the police car, where he asked about his age, the ownership of the Ranger, and where the passenger

was from. He also inquired about Pena-Ponce's employment, the reason for his trip, and his date of birth.

While Officer Weir was questioning Pena-Ponce, Detective Dennis George arrived to assist. He had a police dog with him, and Deputy Faiferlick soon arrived with yet another police dog. Officer Weir told the other officers what he had learned, including "I just tried to do a quick search on his name and date of birth, uh, doesn't come back." He also told them that Pena-Ponce said he was 26 years old, which based on the date of birth he gave, should be 27. Officer Weir also found it suspicious that Pena-Ponce said they were in Lincoln to meet some girls, when the passenger was married to his sister.

While Officer Weir and Detective George discussed obtaining Pena-Ponce's consent to search, Deputy Faiferlick approached the passenger side of the Ranger. He saw numerous cell phones and the passenger trying to kick one under the seat. On the dash was a Santa Muerte statue, which Deputy Faiferlick testified is commonly used by drug traffickers for protection. The passenger said they were traveling from Lincoln after visiting his wife and kids, which Deputy Faiferlick thought was inconsistent with what Pena-Ponce had told Officer Weir. Deputy Faiferlick also noticed that the passenger appeared excessively nervous. He believed that the two were involved in criminal activity, and decided that if Pena-Ponce did not consent to search, he would deploy a drug dog around the Ranger.

Officer Weir then asked if Pena-Ponce minded if he searched the Ranger; Pena-Ponce replied, "No." Officer Weir re-asked if it was "ok," and Pena Ponce said, "It's ok." After a few more questions, Officer Weir contacted the dispatch service to run Pena-Ponce's driver's license number, registration, and the vehicle identification number. Dispatch responded that it could not find any information on the driver's license, temporary tag, or VIN. Officer Weir then handed Pena-Ponce (and later the passenger) written consent-to-search forms, advising them that the forms said it is ok

to look in the car (the forms were in English). He instructed them to provide their signatures, dates of birth, and social security numbers — which they did.

The initial search revealed receipts showing the pair had been in California a few days before. Detective George then brought his dog around the outside of the Ranger. The dog alerted to the presence of drugs in the area underneath the passenger's door, and inside the truck as well. Deputy Faiferlick's dog also alerted to the presence of drugs. The officers noticed some modifications to the truck, but lacked the tools to investigate them. They took the truck to a state garage. Pena-Ponce and the passenger were transported separately in police vehicles. A Spanish-speaking officer, called to interview Pena-Ponce, gave *Miranda* warnings in Spanish from a form written in Spanish.

At the state garage, the officers discovered a compartment under the passenger seat, with at least five kilos of cocaine.

## II.

Pena-Ponce appeals the denial of his motion to suppress the evidence found during the search of the truck. This court reviews "the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id.*

## A.

Pena-Ponce first contends that the district court[2] erred in finding that the initial stop of the truck was not pretextual. "An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle, even if the officer would have ignored the violation but for a suspicion that greater crimes are afoot." *United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004). Pena-Ponce argues that Officer Weir's actual reason for stopping the truck was Deputy Faiferlick's direction to watch for it. He also states that the temporary tag does not provide a basis for the stop because having a temporary tag is not illegal. Pena-Ponce asserts that because Officer Weir never mentioned the window tint during the stop, it is not why Officer Weir stopped him.

The district court agreed that unless Officer Weir had some reasonable question about the temporary tag, it alone could not justify the stop. However, Officer Weir testified that he stopped the truck because it had a temporary tag *and* excessive tint on its windows. The district court found that after viewing the truck, Officer Weir, based on his experience and training, believed the window tint violated both Iowa and Illinois law, providing probable cause to stop the truck. This finding is supported by the officer's testimony and the exhibit containing the video recording of the stop. In addition, the day after the stop law enforcement verified with a tint meter that the windows did not allow the required transparency under Iowa law. The district court's conclusions are supported by substantial evidence, not based on an erroneous interpretation of law, and are not clear mistakes in light of the entire record.

---

[2] The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

**B.**

Pena-Ponce next objects that even if the initial stop was valid, the lawful scope of the traffic stop was impermissibly exceeded. A traffic stop can become unlawful, "if it is 'prolonged beyond the time reasonably required' to complete its purpose." *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007), *quoting Illinois v. Caballes*, 543 U.S. 405, 407 (2005). After stopping a car, an officer may detain the driver while he completes "a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. Barragan*, 379 F.3d 524, 528-29 (8th Cir. 2004), *quoting United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999). While performing these tasks, the officer may ask the driver routine questions, including those about the destination and purpose of the trip, and request that the driver sit inside the police car. *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003). The officer may also ask passengers these questions, in order to verify the information provided by the driver. *United States v. Coney*, 456 F.3d 850, 857 (8th Cir. 2006). The "officer may expand the scope of a traffic stop if he has reasonable suspicion of other criminal activity based on the totality of the circumstances and informed by his training and experience." *United States v. Guerrero*, 374 F.3d 584, 596 (8th Cir. 2004). Whether the stop "is reasonable in length is a fact intensive question, and there is no per se time limit on all traffic stops." *Olivera-Mendez*, 484 F.3d at 510.

Officer Weir asked Pena-Ponce routine questions while doing the normal tasks of the traffic stop. The district court found that he developed reasonable suspicion of criminal activity based on: (1) his belief Pena-Ponce was attempting to stall while answering questions, (2) his story that he had been in Lincoln to visit some girls, with his sister's husband, and (3) his stated age not matching his date of birth. The officers

-6-

believed criminal activity was afoot, and decided to seek Pena-Ponce's consent to search the truck.

At this point, Pena-Ponce had been detained less than ten minutes. Immediately thereafter, Deputy Faiferlick, questioning the passenger, noticed suspicious circumstances: the passenger's excessive nervousness, conflicting stories about why the two had been in Lincoln, multiple cell phones in the truck, the passenger attempting to kick one out of sight, and the Santa Muerte figure. Deputy Faiferlick's brief questioning of the passenger to check the information provided by Pena-Ponce was part of the permissible routine traffic stop. *See Coney*, 456 F.3d at 857. Because the officers developed reasonable suspicion while conducting the normal tasks of the stop, the district court properly concluded that the scope of the stop was not unreasonably expanded.

## C.

Pena-Ponce next argues that because of the language barrier, his oral and written consent to search the truck was not voluntary. "Whether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual." *Barragan*, 379 F.3d at 530. "The focus is not whether [the defendant] subjectively consented, but rather, whether a reasonable officer would believe consent was given and can be inferred from words, gestures, or other conduct." *Guerrero*, 374 F.3d at 588, *citing United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001). "The determination of whether a reasonable officer would believe that [the defendant] consented is a question of fact, subject to review for clear error." *Id.*

The district court concluded that a reasonable officer would have believed that Pena-Ponce orally consented to the search. While he spoke only broken English and had difficulty understanding some questions, the district court found

that Pena-Ponce conversed without difficulty for a substantial portion of the conversation with Officer Weir. Pena-Ponce provided his license and registration on request, and responded appropriately to questions about his name, the details of his trip, where he lived, his work, and the relationship and living arrangements of the passenger. The district court also noted that two times Pena-Ponce told Officer Weir he did not understand a particular question, showing that he usually did understand, but when he did not, he was willing to say so.

According to the audio-recording, Officer Weir asks Pena-Ponce for consent to search the vehicle: "So you don't mind if I check the car for any, any guns, or knives or anything?" Pena-Ponce replies, "No." Officer Weir asks, "It's ok?" Pena-Ponce replies, "It's ok." This court concludes that the district court did not clearly err in finding that a reasonable officer would have believed Pena-Ponce knowingly and voluntarily consented to the search. *Compare* **Guerrero**, 374 F.3d at 589 (upholding district court's determination that consent was involuntary where language barrier existed), *with* **United States v. Gallardo**, 495 F.3d 982, 989 (8th Cir. 2007) (upholding district court's determination that consent was voluntary where language barrier existed); **United States v. Cedano-Medina**, 366 F.3d 682, 687 (8th Cir. 2004) (same); **United States v. Sanchez**, 156 F.3d 875, 878 (8th Cir. 1998) (same); **United States v. Galvin-Muro**, 141 F.3d 904, 907 (8th Cir. 1998) (same).

## III.

The judgment of the district court is affirmed.

----