# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2723
_____

United States of America

*Plaintiff - Appellant*

v.

Joshua W. Rodriguez

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 17, 2016
Filed: August 25, 2016

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Joshua W. Rodriguez was charged with possession of a machinegun and unlawful possession of an assault rifle. The district court suppressed evidence gained after police entered his residence without a warrant. *See **United States v. Rodriguez**,* 2015 WL 4546751 (D. Neb. July 28, 2015). The government appeals. Having jurisdiction under 18 U.S.C. § 3731, this court reverses and remands.

In June 2014, Nebraska Narcotics Investigator Richard Lutter surveyed Rodriguez's house. He saw several items suggesting Rodriguez was growing marijuana: potting plants in the back of his vehicle, carbon dioxide canisters inside the open garage door, and several 55-gallon plastic barrels. Lutter checked Rodriguez's background, finding drug and firearm convictions. Lutter subpoenaed his utility records, which showed usage many times higher than comparable residences in the area. In early December, another officer stopped Rodriguez for a traffic violation, and told Lutter that his vehicle smelled of marijuana (but the officer searched and found no contraband).

Lutter believed he did not yet have probable cause for a search warrant. On December 18, Lutter and four other officers gathered near Rodriguez's residence for a "knock and talk." Lutter and another officer, in plain clothes, walked onto Rodriguez's front steps. Lutter's body camera was recording.

Rodriguez's house had an inner front door and an outer screen door. Lutter opened the screen door, knocked on the front door, and let the screen door close. Rodriguez opened both doors, closed the inner door, and stepped onto the front steps. Lutter immediately smelled marijuana.

Lutter introduced himself as an investigator with the Nebraska State Patrol, said he had a "couple quick questions," and asked Rodriguez if they could "step in and talk real quick" because the neighbors were outside. Rodriguez replied he would "like to ask what it's about first." Lutter said he was "conducting an investigation that's possibly related to the manufacturing of marijuana" and "would like to ask a couple quick questions about it." Lutter added "If there's nothing going on, there's no problems or anything like that, we're out of here, we're out of your hair." Rodriguez did not verbally respond to Lutter's comments, but immediately turned and entered the house. Lutter followed him inside. Rodriguez did not say anything as they entered the house.

Once inside, Lutter detected the "overwhelming" smell of marijuana. The other four officers also entered. Lutter told Rodriguez and his girlfriend to sit at the dining-room table while the other officers conducted a sweep "to make sure there's nobody else in the residence." While the officers swept the house, Lutter told Rodriguez he did not yet have enough evidence to charge him, "had enough to secure a search warrant for the residence," and would apply for it as soon as the other officers secured the house.

During the sweep, one officer saw marijuana plants, bags of marijuana, a pipe, and an AK-47. Leaving Rodriguez and his girlfriend with the other officers, Lutter went and got a search warrant. Officers then seized more than 20 firearms, including a machinegun, and evidence of a marijuana-growing operation.

A grand jury charged Rodriguez with knowingly possessing a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and being an unlawful user and addict in possession of an assault rifle, in violation of 18 U.S.C. § 922(g)(3). He moved to suppress the seized evidence, arguing he did not consent to the officers' warrantless entry and there was no lawful justification for the protective sweep. The magistrate judge recommended denying the motion to suppress, finding, after viewing the body-camera video, that Rodriguez voluntarily consented to the officers' entry. The district court rejected the magistrate judge's findings and suppressed the evidence, concluding Rodriguez did not consent to the officers' entry. The government appeals.

Reviewing a district court's grant of a motion to suppress, this court reviews factual findings for clear error and application of law de novo. *United States v. Hurt*, 376 F.3d 789, 791 (8th Cir. 2004). This court is "bound by the district court's findings of fact regarding the circumstances of the search unless [it] believe[s] on the basis of the record as a whole that the district court clearly erred." *United States v. Rowland*, 341 F.3d 774, 778 (8th Cir. 2003). This court "may reverse the district

-3-

court's ultimate ruling . . . if the ruling reflects an erroneous view of the applicable law." *Id.*

I.

"The Fourth Amendment generally prohibits police from entering a home without a warrant unless the circumstances fit an established exception to the warrant requirement." *United States v. Khabeer*, 410 F.3d 477, 482-83 (8th Cir. 2005). Of course, "[a]n individual may validly consent to an otherwise impermissible search if, in the totality of the circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion." *United States v. Rambo*, 789 F.2d 1289, 1296 (8th Cir. 1986). "Voluntary consent may be express or implied." *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006). Consent may be inferred from the defendant's "words, gestures, or other conduct," and the ultimate inquiry is not whether the defendant subjectively consented, but whether "a reasonable officer would believe consent was given." *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009).

The government argues that the district court should not have suppressed the evidence and clearly erred in finding that the officers violated Rodriguez's Fourth Amendment rights by entering his home without consent. Even if there were a Fourth Amendment violation, however, suppression of the evidence is not always required. "A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by way of the violation from a subsequent criminal prosecution." *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014). "Because exclusion is a prophylactic remedy, however, there are some instances where a Fourth Amendment violation does not trigger the exclusionary rule." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013). One exception to the exclusionary rule is "when an officer acting with objective good faith has obtained a search warrant from a judge or

-4-

magistrate and acted within its scope," even if the warrant is subsequently invalidated. ***United States v. Leon***, 468 U.S. 897, 920 (1984).

*Leon* applies even if "the search warrant application cites information gathered in violation of the Fourth Amendment." ***Cannon***, 703 F.3d at 413; *see also, e.g.*, ***United States v. Conner***, 127 F.3d 663, 667 (8th Cir. 1997) (analyzing *Leon* good faith exception in context of later-invalidated search that officers argued was consensual); ***United States v. McClain***, 444 F.3d 556, 565-66 (6th Cir. 2005) (applying the *Leon* good faith exception despite an earlier Fourth Amendment violation). The touchstone is "whether the officers had an objectively reasonable basis to believe they were complying with [applicable law] and the Fourth Amendment." ***Conner***, 127 F.3d at 667. "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the [officers'] prewarrant conduct must have been close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." ***Cannon***, 703 F.3d at 413. If the officers' prewarrant conduct is "clearly illegal," however, the good-faith exception does not apply. ***United States v. O'Neal***, 17 F.3d 239, 242 n.6 (8th Cir. 1994).

Here, suppression based on the officers' warrantless entry was improper. The body-camera video shows that, based on Rodriguez's behavior, the officers' belief he consented to their entry was objectively reasonable. Although Rodriguez did not affirmatively express consent to the officers' entry—either verbally or nonverbally—he also did not try to close the front door, or protest when Lutter and another officer followed him into the house. Moreover, when Lutter asked if he could step into the house to talk with Rodriguez, Rodriguez immediately opened the screen door wider with one hand, and walked inside with his back to the officers. An objectively reasonable officer could interpret that series of actions as an invitation to enter. *See **United States v. Greer***, 607 F.3d 559, 563 (8th Cir. 2010) (holding that when defendant "opened the door to the porch and stepped back, he impliedly invited

-5-

the officers to enter"); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) ("[T]he action of [the defendant] in the opening of the door and stepping back constituted an implied invitation to enter."). The officers were close to the line of validity, and had a good faith, objectively reasonable belief that Rodriguez gave consent to enter his home. *See Pena-Ponce*, 588 F.3d at 584 (noting that consent may be inferred by defendant's conduct). The district court erred in suppressing the evidence gained from entering Rodriguez's home, especially the "overwhelming" smell of marijuana. *See Conner*, 127 F.3d at 667 (upholding suppression of evidence because "[n]o officer could in good faith believe, under the facts as they existed at the time, that the defendants consented to the officers' visual or physical access to the motel room" (alteration in original)).

II.

The government argues that the district court erred in excluding evidence found during the protective sweep of Rodriguez's home. "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 337 (1990). To be "properly limited," a protective sweep must be a "quick and limited search of premises . . . conducted to protect the safety of police officers or others . . . [and] narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327. In a non-arrest situation, as here, officers must show "a reasonable suspicion of dangerous individuals in the house" to justify a protective sweep; officers may not sweep solely for weapons or contraband. *United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005).

The government does not assert that the officers had reasonable suspicion of other dangerous individuals in Rodriguez's house, or that the sweep was

constitutional. Instead, the government contends that this court should apply two exceptions rather than suppress the evidence from the invalid sweep. First, according to the government, suppression of the evidence was not warranted because of the *Leon* good faith exception. As discussed, the good faith exception does not apply if the officers' conduct is "clearly illegal." *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013). Here, a protective sweep in the absence of an arrest or reasonable suspicion of dangerous individuals was clearly illegal under *Waldner*. The *Leon* good faith exception does not apply.

Next, the government invokes the independent source doctrine (which the district court did not address). Specifically, the government stresses that, before the protective sweep, Lutter had already announced his intent to apply for a search warrant, which would have uncovered the evidence at issue. "Under the independent source doctrine, the exclusionary rule is inapplicable where the evidence was acquired through a source independent of the tainted search." *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013). To determine whether a warrant including tainted information is an independent source, this court asks "first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them." *United States v. Swope*, 542 F.3d 609, 613 (8th Cir. 2008).

Generally, this court may not "infer from the circumstances that the police inevitably would have sought a warrant; findings of fact by the district court are required." *United States v. Leveringston*, 397 F.3d 1112, 1115 (8th Cir. 2005). The district court must "explicitly find that the agents would have sought a warrant if they had not earlier" performed the unconstitutional sweep." *Murray v. United States*, 487 U.S. 533, 542 (1988).

Emphasizing the body-camera recording of the announcement that officers intended to apply for a warrant before the protective sweep, the government urges this court to create a new rule. *See, e.g.*, **United States v. Beck**, 140 F.3d 1129, 1132 (8th Cir. 1998) (noting that this court may find facts in cases "in which the facts are so certain, and the legal consequences so apparent, that little guesswork is needed to determine the grounds for the ruling"). Although Lutter's statement on tape "can be read to provide emphatic support" for the government's position, however, "it is the function of the District Court rather than the Court of Appeals to determine the facts." **Murray**, 487 U.S. at 543. This court remands to the district court to determine whether the independent source doctrine applies in this case.

* * * * * * *

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____