576 October 23, 2024 No. 745

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ABDIKADAIR MOHAMED SALAH,
*Defendant-Appellant.*

Washington County Circuit Court
22CR02733; A180088

Janelle F. Wipper, Judge.

Argued and submitted April 30, 2024.

Carla E. Edmondson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Remanded for resentencing; otherwise affirmed.

**POWERS, J.**

Defendant appeals from a judgment of conviction for harassment, ORS 166.065(3), raising five assignments of error. He first assigns error to the denial of his motion to suppress evidence, arguing that neither the officer-safety exception nor consent justified the warrantless entry into his home. Conceding that the officer-safety exception does not apply in this case, the state remonstrates that the deputy entered under a reasonable belief of implied consent. As explained below, because there is sufficient evidence to support the trial court's determination that the sheriff's deputy entered the home based on implied consent, the court did not err in denying defendant's motion to suppress. Defendant's last four assignments of error challenge the imposition of four special conditions of probation because they were not announced in open court and because the conditions do not reasonably relate to defendant's crime of conviction. The state concedes, and we agree, that the court erred by failing to announce the special probation conditions in open court. Accordingly, we remand for resentencing and otherwise affirm.

We begin with defendant's challenge to the denial of his motion to suppress. We set out the background facts based on the trial court's express and implicit findings consistent with the trial court's denial of the motion to suppress. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). Defendant called 9-1-1 to report a verbal argument with S, his wife. Deputy Hazel with the Washington County Sheriff's Office responded to the call and arrived approximately fifteen minutes later. As Hazel approached the apartment, defendant opened the apartment door, came outside, and began talking to her on the front patio. S and their four children stood in the doorway and watched. Defendant and S were separated by several feet. No one had visible injuries.

When Officer Hinkelman with the Hillsboro Police Department arrived as the cover officer, defendant told Hazel, "No. We can talk over here. I—I called you guys." Hazel believed that defendant did not want her to speak with S, and she told defendant that she had to speak with both parties. In response, defendant said, "Okay. Okay."

Shortly after the cover officer arrived, S started yelling in a language that the officers did not understand. S was pointing at defendant, and she was visibly upset. At that time, S was standing a few steps back from within the doorway and the door was wide open. In response to the yelling, Hazel entered the apartment and shut the door. Hazel did not speak with S before entering the apartment.

Once inside the home, S turned away from Hazel and walked into the kitchen. The deputy asked one of the children if anyone else was home and asked if they could tell her S's name. Hazel called a Somali interpreter and asked S to come talk to the interpreter, who was on her cellphone speaker. S walked towards the deputy and spelled her name for the interpreter. S continued to speak in Somali while crying and pointing outside to defendant, who continued talking with the cover officer on the patio. The interpreter relayed that S described that defendant had pushed S and threw water on her. S showed the deputy the spot where the floor was wet. Hazel took photos of the scene but did not collect any physical evidence.

Before trial, defendant moved to suppress—solely under the Fourth Amendment to the United States Constitution—any statement and all derivative evidence discovered after Hazel entered the apartment. Defendant argued in his written motion, supporting memorandum, and at the suppression hearing that he had objected to Hazel's entry and that no exception to a warrantless search applied. Citing to *Georgia v. Randolph*, 547 US 103, 106, 126 S Ct 1515, 164 L Ed 2d 208 (2006), defendant asserted that law enforcement could not enter the residence even if S consented because, in his view, he made an express denial of consent. The state remonstrated that this was not a search protected by the Fourth Amendment and, alternatively, the entry was lawful because either the officer safety or the exigent circumstances exception applied. Further, responding to defendant's reliance on *Randolph*, the state argued that there was not an express denial in that defendant "never expressly told officers not to enter the house."

After holding a hearing on defendant's motion in which it received into evidence body-cam footage from the

responding officers and heard testimony from Hazel, the trial court denied defendant's motion, concluding that there was a search under the Fourth Amendment because there is a privacy interest in the home and that the entry was lawful both because the officer-safety exception applied and under *Randolph*. The court concluded that, "given what was happening at that particular time, it was reasonable for the officer to go in, separate the parties and close the door." In denying the defendant's suppression motion, the court made several factual findings: (1) there was no express denial by defendant to have officers come into the home; (2) yelling and screaming between S and defendant occurred within "mere seconds" after the deputies showed up to respond to a domestic violence call; and (3) there was no further expression of denial of consent once Hazel was inside the house. In making its ruling, the court commented that *Randolph*, 547 US at 117-21, "addresses the ability * * * for officers to talk to both parties in a domestic violence situation." The court concluded that the exception for exigent circumstances did not apply because only a verbal argument had been reported, and defendant was already outside of the apartment.

Ultimately, the jury convicted defendant of harassment. At sentencing, the state requested that the trial court impose the domestic-violence package of supervision conditions. Defendant objected on the grounds that it was not reasonably related to the crime of conviction, harassment, and he requested the anger-management package instead. The court imposed the domestic-violence package and did not specify any of the conditions within the package when it pronounced defendant's sentence. The court advised defendant that his translator would go "through the entire domestic violence package" with defendant. The record does not disclose whether the translator went through the package with defendant, nor is there anything in the record that suggests that defendant was provided any documentation explaining the details of the domestic-violence package.

On appeal, defendant first assigns error to the denial of his motion to suppress. We review a court's ruling on a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial

court's factual findings if there is constitutionally adequate evidence to support them. *Id.* If the court did not make express findings of fact on all pertinent issues, we "presume that the facts were decided in a manner consistent with the court's ultimate conclusion," but only if the evidence allows for application of that presumption. *Id.*

Renewing his Fourth Amendment argument on appeal, defendant asserts that the officer-safety exception justifying the warrantless entry into his home does not apply in this case because he was outside and separated from his wife, there were no visible weapons, no one had visible injuries, and there was nothing to suggest that there were other people in the apartment that could have posed a threat. In defendant's view, given the circumstances, there was no objectively reasonable basis to support that entry was necessary to prevent physical harm to the officers. Defendant contends, among other arguments, that law enforcement did not have consent to enter his home because, in his view, there was no evidence that either defendant or S consented to the entry, and defendant was not required to deny consent. Moreover, defendant asserts that S's consent to the deputy's entry is not an implicit finding of the trial court because the court erroneously read *Randolph* as creating a *per se* domestic-violence exception that allows law enforcement the authority to talk to both parties regardless of consent. Defendant maintains that, because the court's reasoning was based on officer safety and not implied consent, we would need to review under "the right for the wrong reasons" principle as articulated in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), if we were to affirm on that basis.

Further, defendant contends that the evidence discovered as a result of Hazel's entry could not have been discovered by other lawful means and that the error was harmful. Defendant argues that the photographs obtained corroborated and bolstered S's testimony, increasing her credibility. Defendant also asserts that the responding deputies' testimony about S's statements at the scene provided the most contemporaneous account of the incident and that

closeness in time likely rendered the deputies more reliable in the eyes of the jury.

For its part, the state concedes on appeal that the officer-safety exception did not apply because there was no immediate threat of serious physical injury. The state further does not argue on appeal that there were exigent circumstances. The state contends that the trial court correctly reasoned that the deputy reasonably entered defendant's apartment to discuss a domestic-violence complaint with a presumed victim and that the victim implicitly consented to the entry. The state asserts that *Randolph* did not preclude the deputy's entry into the home because defendant did not explicitly object. In the alternative, if defendant did expressly object to the entry, the state argues that *Randolph* authorized the deputy to enter the home to protect S from domestic violence by determining whether violence, or the threat of violence, had just occurred, even if a co-tenant objected.

As an initial matter, we agree with the parties' arguments that the officer-safety exception did not apply in this case and that there were not exigent circumstances to justify the warrantless entry into the home. Here, law enforcement was not responding to an immediate threat of physical harm or attending to anyone in need of emergency aid. Defendant was outside the apartment, and there is no information in the record to suggest that there were other people inside that could have posed a threat to law enforcement or others. Thus, to the extent that the trial court denied defendant's suppression motion based on its conclusion that the warrantless entry was justified by the officer-safety exception, the trial court erred.

However, given the court's ruling and factual findings, we also understand the trial court to have relied on S's implied consent when it denied the motion to suppress. We turn to that issue and ultimately conclude that the court's factual finding on consent, which is supported by evidence in the record, is dispositive.

Under the Fourth Amendment, a warrantless search is *per se* unreasonable unless it fits into an established exception to the warrant requirement. *California v.*

*Acevedo*, 500 US 565, 580, 111 S Ct 1982, 114 L Ed 2d 619 (1991). One such exception occurs when an individual freely and voluntarily consents to the search. *United States v. Rodriguez*, 834 F3d 937, 940 (8th Cir 2016). Consent may be express or implied. *United States v. Lakoskey*, 462 F3d 965, 973 (8th Cir 2006).

Implied consent may be inferred from "words, gestures, or other conduct," and the ultimate inquiry is not whether a person subjectively consented, but whether a reasonable officer would believe consent was given. *Rodriguez*, 834 F3d at 940-41 (concluding that there was implied consent where the defendant did not affirmatively consent but "did not try to close the front door, or protest when [officers] followed him into the house") (quoting *United States v. Pena-Ponce*, 588 F3d 579, 584 (8th Cir 2009)); *see also United States v. Risner*, 593 F3d 692, 695 (7th Cir 2010) (concluding that there was implied consent where the victim did not protest entry into residence and the "weather and common sense compelled them to move inside to take [the victim's] statement"); *United States v. Griffin*, 530 F2d 739, 743 (7th Cir 1976) (concluding that despite the defendant's silence in response to police questions about a possible burglary at his residence, his conduct in stepping back and leaving the door open was consent to enter the home); *Robbins v. MacKenzie*, 364 F2d 45, 48 (1st Cir 1966) (holding that an officer who identified himself and his purpose from the other side of a closed door had "every reason to assume that the act of unlocking and opening the door, without more, is a consent to talk, and that the walking back into the room is an implied invitation to conduct the talking inside").

When two or more people share "common authority" over a place, any one of them may generally consent to a search. *United States v. Matlock*, 415 US 164, 171, 94 S Ct 988, 39 L Ed 2d 242 (1974). There is a "narrow exception" to the common authority rule: when two people share common authority over a premise and both are present, if one expressly objects to the search and the other consents, the objection will prevail. *Randolph*, 547 US at 106. If the search proceeds, anything found cannot be used against the person who objected. *See id.* (concluding that when a

physically present co-occupant objected, the warrantless search was invalid as to the person who objected). However, this narrow exception applies only if the objection is express. *See, e.g.*, *United States v. Moore*, 770 F3d 809, 813 (9th Cir 2014) (requiring the co-occupant's express and unequivocal refusal); *United States v. Watkins*, 760 F3d 1271, 1283 (11th Cir 2014) (requiring an express refusal); *United States v. Delancy*, 502 F3d 1297, 1307-08 & n 7 (11th Cir 2007) (determining that the defendant who did not object was not covered by *Randolph* even though the defendant possibly considered objection futile).

In this case, there is evidence to support the trial court's implicit finding that S consented to the search. That is, under the totality of the circumstances, Hazel's conduct before and after entering the home permits an implicit finding that Hazel entered because S impliedly consented to the entry. When Hazel arrived, S was standing a few steps back in the doorway with the door wide open. Further, the officers could see that S was visibly upset and could hear S yelling in a language they did not understand. Hazel went into the residence and closed the door in response to that yelling. From the circumstances presented, the trial court permissibly could find that a reasonable officer would conclude that walking into the home and closing the door was the quickest way to separate the parties, and that S understood that law enforcement was there to investigate based on the 9-1-1 call and may want to talk with her.

Importantly, at no point did S try to close the door or protest when Hazel entered. Instead, S walked further into the house and later talked to Hazel with the help of an interpreter who was on the phone. When Hazel called the interpreter, S was cooperative and relayed her version of what happened. Although engaging in a conversation with law enforcement after entry into the home does not always indicate consent, in the specific circumstances of this case, we conclude that the evidence of S's behavior was consistent with someone who was consenting rather than someone who was withholding consent or objecting to a deputy's entry into the home.

Thus, because the evidence in the record supports that a reasonable officer would have understood that S's

acts and gestures amounted to consent to enter, we conclude that there is sufficient evidence to support the trial court's implicit finding of consent, which was consistent with its overall conclusions that the entry was lawful and that "it was reasonable for the officers to go in, separate the parties and close the door."

Given S's consent, we further conclude that *Randolph* does not preclude the search. In so concluding, we rely on the trial court's factual finding, which is not challenged on appeal, that defendant did not expressly deny consent. The court noted that the body camera footage did not show that defendant told the officers that he did not want them to go into his home, and there was never a request for the officers to leave the premises. Because the narrow exception under *Randolph* requires an express objection, it does not apply in the circumstances of this case.[1] Further, given that there is sufficient evidence to support the conclusion that the entry was lawful because Hazel had S's implied consent to enter, we need not analyze this case under the right for the wrong reasons principle, nor do we reach the state's argument that entry was lawful under *Randolph* or the discussion of a potential domestic-violence exception.

In sum, we conclude that, because the trial court relied on S providing implied consent for entry into the home, the court did not err in denying the motion to suppress. Accordingly, we reject defendant's first assignment of error.

On defendant's second through fifth assignments of error, he argues that the trial court erred when it imposed special conditions of probation because those conditions were not announced in open court and the conditions did not reasonably relate to defendant's crime of conviction. There were four special conditions: defendant was required to (1) "complete an approved Domestic Violence Intervention Program;" (2) attend a "Survivor's Impact Panel"; (3) obtain

---

[1] To the extent that defendant argues in his reply brief that the trial court misread *Randolph* and applied a *per se* rule for domestic violence cases, we summarily reject that argument. We understand the trial court's ruling to note that it reviewed *Randolph* before making its determination and ultimately relied on S providing implied consent for entry into the home when it denied the suppression motion.

written permission from his supervising officer before participating in "couples' or family counseling"; and (4) "[d]isclose any potential intimate sexual relationships (prior to sexual intimacy)" to his supervising officer and "consent to the supervising officer communicating with others about the defendants domestic violence history."

The state concedes that the trial court erred by imposing the special conditions of probation because they were not announced in open court. We agree, and we accept the state's concession. A criminal defendant has the right to have his, her, or their sentence announced in open court, and a trial court errs if it does not do so. *State v. Priester*, 325 Or App 574, 581, 530 P3d 118, *rev den*, 371 Or 332 (2023).

Because the four challenged conditions were not announced in open court, we remand for resentencing. We decline to address defendant's remaining arguments as to those conditions because any such arguments can be presented to the trial court in the first instance on remand. *See State v. Reed-Hack*, 313 Or App 728, 729-30, 495 P3d 196, *rev den*, 369 Or 69 (2021) (declining to reach the defendant's argument regarding a condition of probation because "it may be raised on remand for the trial court to consider in the first instance").

Remanded for resentencing; otherwise affirmed.