# Supreme Court of Florida

---

No. SC2022-0524

---

**STATE OF FLORIDA,**
Petitioner,

vs.

**JOSHUA LYLE CRELLER,**
Respondent.

May 23, 2024

FRANCIS, J.

It is well-settled that once a driver has been lawfully stopped for a traffic violation, police officers may order the driver out of the vehicle for officer safety reasons without violating the Fourth Amendment's prohibition of unreasonable searches and seizures. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110, 111 n.6 (1977); *Maryland v. Wilson*, 519 U.S. 408, 413 n.1 (1997) ("[T]hat we typically avoid *per se* rules concerning searches and seizures does not mean that we have always done so; *Mimms* itself drew a bright line . . . ."). The issue here is whether this well-settled rule applies

to a K-9 officer who arrives midway through a lawful traffic stop to perform a dog sniff sweep of a vehicle's exterior. The Second District Court of Appeal said "no," certifying conflict with the Fifth District Court of Appeal in *State v. Benjamin*, 229 So. 3d 442 (Fla. 5th DCA 2017), which reached the opposite conclusion. *Creller v. State*, 336 So. 3d 817, 825 (Fla. 2d DCA 2022).

We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.[1] For the reasons that follow, we quash *Creller* and approve *Benjamin*.

## I. Background

Police charged Joshua Lyle Creller ("Creller") with resisting an officer without violence following a 2018 traffic stop when he refused to comply with a K-9 officer's mid-stop command to exit his vehicle for officer safety. Following a search incident to arrest, Creller was also charged with possession of a controlled substance, methamphetamine; he moved to suppress the evidence of its discovery.

---

1. The State of Florida petitioned for review based on *Creller*'s certified conflict with *Benjamin*. In response, Creller also asked this Court to accept jurisdiction.

At the suppression hearing, the trial court found the State's evidence credible, which established the following: on the date in question, Officer Diaz, a plain-clothes, undercover officer with the Tampa Police Department's Tactical Narcotics Team (TNT), was surveilling an area known for illegal narcotics activity. While doing so, he observed Creller commit a traffic infraction,[2] so he followed Creller's truck for several blocks. He didn't stop Creller's vehicle himself; instead, he radioed for a marked car with sirens and lights to initiate the stop.

After the marked car stopped Creller's truck, Officer Diaz and the uniformed officer, Sergeant Covais,[3] approached Creller at his window to speak with him. Fairly quickly into their encounter, Officer Diaz asked Creller if he could search the vehicle. Creller said no, at which point Officer Diaz called for a K-9 unit.

---

2. He cut through the parking lot of a gas station to avoid a red light in violation of section 316.074(2), Florida Statutes (2018). *Creller*, 336 So. 3d at 819.

3. Sergeant Covais was not present at the suppression hearing to testify.

Officer Diaz also called for another backup officer to write the traffic citation because he did not have the citation software on his computer.[4] TNT member Officer Norman responded to the call and quickly arrived on the scene. Officer Norman was tasked with preparing Creller's traffic citation.

Meanwhile, TNT member K-9 Officer Simmonds responded to Officer Diaz's call and arrived on scene several minutes later. After identifying himself, Officer Simmonds asked Creller if he had anything illegal in his possession. Creller said no. He then asked Creller for permission to search the vehicle and Creller, again, said no. At that point, he told Creller, "I need you to exit the vehicle for my safety. You're going to stand on the side of the sidewalk while I get my dog to do a narcotic sweep . . . ." Officer Simmonds explained that this was necessary because Creller was in control of the vehicle, and Officer Simmonds did not want Creller to use his vehicle to hit him or his dog.

---

4. At the hearing, Officer Diaz could not say whether Sergeant Covais had the ability to write the ticket.

Creller refused.  So Officer Simmonds warned him that continued refusal could result in his arrest for obstruction.  Creller continued to refuse, even after Officer Simmonds explained that exiting the vehicle was for officer safety.

After a final warning, Creller, now argumentative and continuing to refuse to come out of the vehicle, was forcefully removed.  Officer Norman, who was still in the process of preparing the citation, observed the struggle at Creller's door and left his computer to assist the other officers.  Creller was subsequently charged with resisting without violence and possession of methamphetamine, the latter of which was discovered during a search of his person when he was removed from his car.

At the conclusion of the evidence at the suppression hearing, the parties and the trial court discussed, at length, *Mimms*, 434 U.S. 106 (holding that an officer may direct a driver to exit a vehicle during a lawful traffic stop for officer safety), and *Rodriguez v. United States*, 575 U.S. 348 (2015) (holding that a lawful traffic stop may not be prolonged to conduct a dog sniff sweep after the traffic citation has been issued unless separately supported by reasonable, articulable suspicion).  Following this discussion, and expressly

- 5 -

finding that *Rodriguez* did not apply, the trial court denied Creller's motion to suppress. A jury convicted him, but the Second District reversed on appeal. *Creller*, 336 So. 3d at 819.

### The Second District's Decision in *Creller*

The Second District held that Creller was unlawfully seized in violation of the Fourth Amendment when the initial traffic stop transformed into a narcotics investigation for which no prior probable cause existed. *Id.* at 822-25. According to the *Creller* court, the K-9 unit's exit command for officer safety, the refusal of which led to Creller's forcible removal and arrest, was something the trial court should have addressed. *Id.* at 822.

Discussing the inapplicability of *Mimms* and its progeny, *Wilson*, 519 U.S. 408, to Creller's case, the Second District explained that the rule in both cases—that concerns for officer safety meant an officer could lawfully order the occupant of a vehicle out of it during a traffic stop—was conditioned on there being an actual and continuing *traffic stop*. *Id.* at 822. But in Creller's case, the court opined the testimony established that the necessity of ordering Creller out of the vehicle wasn't realized until *after* the attempted vehicle sweep. *Id.* This demonstrated that the

traffic stop had *detoured* into a narcotics investigation. *Id.* at 822-23. And such a scenario brought Creller's case squarely in line with *Rodriguez* rather than *Mimms*. *Id.*

In reversing the judgment and sentence, the Second District certified conflict with *Benjamin*, 229 So. 3d 442. *Benjamin* held, on facts similar to *Creller'*s, that a mid-stop exit command for the safety of the arriving K-9 officer was lawful. *Creller,* 336 So. 3d at 823, 825. There, the traffic officer pulled over a driver in a parking lot and requested a K-9 unit. *Benjamin,* 229 So. 3d at 442. While writing the citation, the K-9 unit arrived and asked the traffic officer to issue the exit command. *Id.* When the driver exited, the officer saw that a firearm had been concealed behind the driver's leg. *Id.* The driver moved to suppress the firearm, which the trial court granted, but the Fifth District reversed. *Id.* at 443-44.

In the ensuing decision that only expressly discussed *Mimms*, the Fifth District held that Benjamin was lawfully detained. *Id.* at 444. "As a result, the police officer could properly order Benjamin to exit his vehicle, even if the officer did not have a particularized basis to believe that Benjamin was a threat to the officer's safety." *Id.*

Explaining why it disagreed with the Fifth District, the *Creller* court opined that the *Benjamin* court improperly stacked *Mimms* and *Rodriguez:*[5]

> The rationale relied upon by the Fifth District in *Benjamin* and applied by the trial court in this case essentially stacks the holdings in *Rodriguez* and *Mimms*: (1) vehicle sweeps are permissible when they do not prolong a valid traffic investigation; (2) officers may ask drivers to exit their vehicles during a valid traffic investigation; (3) therefore, as long as it does not prolong the traffic investigation, officers may order drivers to exit their vehicles for the vehicle sweep. However, this reasoning appears to be an erroneous extension of the carveouts in *Mimms* and *Rodriguez*: The Supreme Court in *Rodriguez* expressly indicated that a deviation from the mission of the traffic stop such as the K-9 unit officer's attempted vehicle sweep enjoys no support from *Mimms* because "safety precautions taken in order to facilitate such detours" cannot "be justified on the same basis" as those taken to ensure officer safety for the purpose of conducting the traffic stop itself. *See Rodriguez*, 575 U.S. at 356-57.

*Creller*, 336 So. 3d at 823.

This case follows.

---

5. Yet, nowhere in the *Benjamin* opinion does the Fifth District discuss the *Rodriguez* case.

## II. Analysis

In Fourth Amendment suppression cases, we review legal issues de novo and will sustain factual findings that are supported by competent, substantial evidence. *See Presley v. State*, 227 So. 3d 95, 99 (Fla. 2017) (citing *Twilegar v. State*, 42 So. 3d 177, 192 (Fla. 2010)). We are constitutionally bound on search and seizure issues to follow the decisions of the United States Supreme Court. *See* art. I, § 12, Fla. Const. ("The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures . . . shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.").

We first examine the specific United States Supreme Court precedent at issue here: the officer safety rule under *Mimms* and *Wilson*, followed by the dog sweep rule under *Rodriguez*'s predecessor, *Illinois v. Caballes*, 543 U.S. 405 (2005), and *Rodriguez*. From our examination of these cases, we conclude that *Creller* misreads *Rodriquez*—which does not modify, much less address the officer safety rule in *Mimms*—to hold that the officer safety rule only applies to officers completing the mission of the

traffic stop.  We also conclude that *Rodriguez* does not apply because the K-9 officer here attempted a sweep *during* a lawful traffic stop, not after.

We therefore agree with *Benjamin* that *Mimms* applies, and we conclude that a K-9 officer may order a driver to exit a vehicle *during* a lawful traffic stop for officer safety reasons.  Accordingly, we quash *Creller* and approve *Benjamin*.

### The Officer Safety Rule Under *Mimms* and *Wilson*

In *Mimms*, the United States Supreme Court held that an exit command given by an officer *during a lawful traffic stop* is not unusually harmful to an individual's privacy; it is, instead, a "mere inconvenience" because the driver is lawfully detained whether inside the car or out.  434 U.S. at 109-11.

*Mimms* involved a traffic officer who had no particular suspicion about the driver's behavior but had a practice of asking drivers to exit their vehicles as a "precautionary measure to afford a degree of protection to the officer."  *Id.* at 109-10.  Balancing the officer's safety against the driver's privacy interests, the Supreme Court found it "too plain for argument" that officer safety "is both legitimate and weighty."  *Id.* at 110.  The Supreme Court explained

that "we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile," including the risk of being assaulted or shot, as well as the "hazard of accidental injury from passing traffic." *Id.* at 110-11. On the other hand, any intrusion into the driver's privacy is *de minimis* and a "mere inconvenience" given that the driver is already lawfully detained whether inside the car or out. *Id.* at 111. *Wilson* later established that *Mimms'* holding was a "bright line" rule. 519 U.S. at 413 n.1.[6]

### Dog Sniff Sweeps Under *Caballes* and *Rodriguez*

In *Caballes*, the Supreme Court held that a dog sniff sweep could be conducted *during* a lawful traffic stop without offending the Fourth Amendment. 543 U.S. at 410. In so holding, the Supreme Court rejected reasoning that a sweep turns a stop into a narcotics investigation that must be independently supported by

---

6. *Mimms* was extended in *Wilson*, 519 U.S. 408, to permit officers to also command vehicle passengers to exit during a lawful traffic stop. The Supreme Court reasoned in *Wilson* that "the motivation of a passenger to employ violence to prevent apprehension of [a more serious] crime is every bit as great as that of the driver." *Id.* at 414.

probable cause.  *Id.* at 408.  The Supreme Court explained that a dog sniff sweep's potential to sniff out drugs in the vehicle is not even a search under the Fourth Amendment because it affects no constitutionally protected interest in the driver's privacy.  *Id.* at 408-10.[7]

_____

7.  As explained in *Caballes*:

> Official conduct that does not "compromise any legitimate interest in privacy" is not a search subject to the Fourth Amendment.  [*United States v. Jacobsen*, 466 U.S. 109, 123 (1984)].  We have held that any interest in possessing contraband cannot be deemed "legitimate," and thus, governmental conduct that *only* reveals the possession of contraband "compromises no legitimate privacy interest."  *Ibid.*  This is because the expectation "that certain facts will not come to the attention of the authorities" is not the same as an interest in "privacy that society is prepared to consider reasonable."  *Id.* at 122 (punctuation omitted).  In *United States v. Place*, 462 U.S. 696 (1983), we treated a canine sniff by a well-trained narcotics-detection dog as "*sui generis*" because it "discloses only the presence or absence of narcotics, a contraband item."  *Id.* at 707; *see also* [*Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000)]. . . .
>
> . . . .
> . . . A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.

534 U.S. at 408-10.

Expressly adhering to and reaffirming its decision in *Caballes*, *Rodriguez* held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 575 U.S. at 350.

In *Rodriguez,* after the traffic citation was issued by the officer—a K-9 officer—the driver was detained several more minutes for the officer to conduct a dog sniff sweep. *Id.* at 351-52. *Rodriguez* characterized the dog sniff sweep performed *after* issuance of the traffic citation as a separate investigation unrelated to the primary "mission" of the traffic stop. *Id.* at 355-56. Though *Rodriguez* recognized that an officer may also "conduct certain unrelated checks during an otherwise lawful traffic stop," the officer "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355.

For these reasons, "[a] seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350-51 (alteration in

original) (quoting *Caballes*, 543 U.S. at 407). "The Court so recognized in *Caballes*, and [the Supreme Court] adhere[d] to the line drawn in that decision." *Id.* at 351.

### *Rodriguez* Does Not Modify *Mimms*

Based on our review of *Rodriguez* and *Mimms*, we conclude that *Rodriguez* neither analyzed the lawfulness of an exit command nor directly addressed the central holding of *Mimms*. It analyzed instead whether a traffic stop may be reasonably *prolonged* and the driver further detained by several minutes *after* the traffic citation is issued for a K-9 unit to perform a sweep.

*Rodriguez* distinguished the analogy to "officer safety interests" in *Mimms* as being "different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." 575 U.S. at 356-57. *Rodriguez* noted that even if, by analogy, "the imposition" of detaining the driver a few more minutes for the K-9 sweep "was no more intrusive than the exit order in *Mimms*, the dog sniff," which *Rodriguez* observed is for the detection of crime, "could not be justified on the same basis" as a *de minimis* privacy intrusion. *Id.* In other words, *Rodriguez* said that the traffic stop ended once the citation issued, and, even under the

- 14 -

*Mimms* balancing analysis, a brief further detention for a dog sniff sweep is not a mere inconvenience to the driver.[8]

### *Rodriguez* Does Not Apply; *Mimms* Does

*Rodriguez* centered on a traffic stop that was prolonged for a dog sniff sweep *after* the citation had been issued. This observation leads us to two conclusions for purposes of our analysis here.

First, *Rodriguez* does not apply to this case. In this case, the attempted sweep occurred *during* a lawful traffic stop, not *after* a traffic citation was issued. The Second District itself set forth these facts, concluding both that the attempted K-9 sweep occurred

---

8. *Mimms* came up in *Rodriguez* in the context of rejecting the United States Court of Appeals for the Eighth Circuit's *de minimis* rule permitting dog sniff sweeps *after* a traffic citation had been issued—a rule the Eighth Circuit developed by analogy to the balancing test performed in *Mimms*. *Rodriguez*, 575 U.S. at 353, 356. The Eighth Circuit held that detaining a driver a few more minutes *after* a traffic citation issued was a *de minimis* intrusion to the driver's privacy when balanced against the government's "strong interest in interdicting the flow of illegal drugs along the nation's highways." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 649 (8th Cir. 1999), *abrogated by Rodriguez*, 575 U.S. 348. Just as the Second District did in *Creller*, the dissent either overlooks or ignores this context.

*during* and did not prolong the traffic stop, and that the stop was supported by probable cause. *See Creller*, 336 So. 3d at 821, 824.[9]

Second, *Mimms* does apply, and it permits a K-9 officer attempting a sweep *during* a lawful traffic stop to issue an exit command for officer safety. The exit command still only causes a *de minimis* intrusion to the driver during a stop, while the K-9 officer's safety far outweighs the driver's interest in his location

9. In concluding that *Rodriguez* applies here, *see* dissenting op. at 20, the dissent misses the point. *Rodriguez* involved a *completed* traffic stop, not an ongoing one like the one at issue here. Having *completed* the mission of the stop, and issued the ticket, any further delay in *Rodriguez* was illegal absent some other independent, probable cause basis.

Beyond that, the dissent's footnote 12 quotation of language from *Rodriguez*, dissenting op. at 20, is missing critical context that further supports, rather than contradicts, our holding today. In full, the *Rodriguez* court was responding to criticism from Justice Alito's dissenting opinion by reiterating that what was essential to any analysis of the lawfulness of the stop was whether it was *prolonged* by the dog sweep. *See Rodriguez*, 575 U.S. at 357 ("As we said in *Caballes* and reiterate today, a traffic stop 'prolonged beyond' that point [the amount of 'time reasonably required to complete [the stop's] mission'] is 'unlawful.' The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, as Justice Alito supposes, but whether conducting the sniff 'prolongs'—*i.e.,* adds time to—'the stop.' " (quoting *Caballes*, 543 U.S. at 407)) (citations omitted); *see also id.* at 370-72 (Alito, J., dissenting). And the Second District in *Creller* specifically concluded that the stop here was <u>not</u> prolonged. 336 So. 3d at 821.

during a lawful traffic stop: in his car or out. Further, the potential for detecting criminal activity places a K-9 officer at an even greater risk of danger. *See Wilson,* 519 U.S. at 414 ("It would seem that the possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop."). And as a practical matter, it makes little sense why *Mimms* would not apply to a K-9 officer, because a K-9 officer may be the officer initiating the stop. *See, e.g., Rodriguez,* 575 U.S. at 351-52 (traffic stop initiated by a K-9 officer, who also conducted the dog sniff sweep); *Florida v. Harris,* 568 U.S. 237, 240 (2013) (same).[10]

## This Case

There is no question here that Creller was lawfully stopped, or that Officer Simmonds' attempted sweep did not prolong the stop. *See Creller,* 336 So. 3d at 821, 824. When Officer Simmonds

---

10. The dissent's assertion that we "stacked" *Mimms* and *Rodriguez, see* dissenting op. at 21, is easily rebuffed by our analysis above, where we not only analyzed each case separately, but clearly concluded that *Rodriguez* does <u>not</u> apply to this case. If *Rodriguez* doesn't apply in the first instance, it strains credulity to then conclude that its "carve-out" applies.

arrived on scene, Officer Norman was still writing the ticket. Officer Simmonds issued an exit command to Creller several times, repeatedly explaining that it was for the safety of himself and his dog. The fact that Creller was still in control of his vehicle made the situation more dangerous to Officer Simmonds and his dog. Because the weighty interests in protecting the K-9 unit during this lawful traffic stop outweighed the *de minimis* temporary interference with Creller's interest in remaining inside his vehicle, Officer Simmonds' exit command to Creller was reasonable under *Mimms*. Officer Simmonds gave that command midway through the lawful traffic stop, and his doing so did not convert the stop into a narcotics investigation, even though narcotics were discovered.

### III. Conclusion

Based on the foregoing, we quash the Second District's decision in *Creller* and approve the Fifth District's decision in *Benjamin*. We hold that binding Fourth Amendment precedent permits a K-9 officer arriving midway through a lawful traffic stop to command the driver to exit the vehicle for officer safety before conducting a lawful vehicle sweep.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

Whether a law enforcement exit order is a constitutional seizure depends on the reasonableness of the order given its unique circumstances. *See Terry v. Ohio*, 392 U.S. 1, 19 (1968). Reasonableness "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

In this case, the majority holds that under the Fourth Amendment, "a K-9 officer arriving midway through a lawful traffic stop [may] command the driver to exit the vehicle for officer safety before conducting a lawful vehicle sweep." Majority op. at 18. However, the arbitrariness of the vehicle sweep here, along with the evidence that removal was not necessary to ensure officer safety

during issuance of the traffic citation, calls for us to apply *Rodriguez*.[11]  I respectfully dissent.

The Second District correctly applied *Rodriguez* to conclude that on balance, there was no justification to outweigh Creller's right to personal security.  *See Creller v. State*, 336 So. 3d 817, 824 (Fla. 2d DCA 2022).  In *Rodriguez*, the United States Supreme Court explained that on-scene investigation of other crimes "detours from th[e] mission" of the traffic stop.  *See* 575 U.S. at 356.  The Court reasoned that such investigation and its related safety precautions cannot be justified by officer safety, an interest that "stems from the mission of the stop itself."  *See id.* at 356-57.  The Court thus held that the government's interest in detecting drug trafficking was outweighed by the driver's right to personal security when an arbitrary vehicle sweep prolongs a traffic stop that reasonably should have been completed.  *See id.*[12]

---

11.  *Rodriguez v. United States*, 575 U.S. 348, 356 (2015).

12.  Notably, the Court reasoned that "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . ."  *Id.* at 357.

The majority "stacks" the holdings of *Mimms*[13] and *Rodriguez* by overlooking the important *Rodriguez* carveout: " '[S]afety precautions taken in order to facilitate such detours [from the traffic mission]' cannot 'be justified on the same basis' as those taken to ensure officer safety for the purpose of conducting the traffic stop itself." *See Creller*, 336 So. 3d at 823 (quoting *Rodriguez*, 575 U.S. at 356-57).

In the present case, there was probable cause to support Creller's traffic infraction. *Id.* at 824. However, the vehicle sweep was arbitrary. The record establishes that the K-9 officer was conducting a random vehicle sweep "admittedly based on no suspicion of criminal activity whatsoever." *Id.* The record also establishes that "[t]he first point in time at which an officer asked Creller to exit the vehicle was when the K-9 unit officer asked him to do so out of concern for the officer's safety and that of his dog so that he could conduct the vehicle sweep." *Id.* at 822.

Like the vehicle sweep in *Rodriguez*, the exit order given by the K-9 officer here was an "additional intrusion" into Creller's right to

---

13. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977).

personal security that detoured from the mission of the traffic stop. *See Rodriguez*, 575 U.S. at 356 (citing *Mimms*, 434 U.S. at 110-11). The lack of probable cause to support a belief that there was contraband in Creller's vehicle—coupled with the record evidence that his removal was not necessary for officer safety in issuing the traffic citation—leaves the government without a justification for the exit order.

Moreover, Creller's right to personal security carries more weight than the majority affords it. An exit order is not an innocuous request. While police search the vehicle, the driver must stand on the side of the road in view of all passersby. The implications heighten when, as in Creller's case, the scene involves two or more police cars with lights glaring and with an active K-9 unit. To put it simply, this intrusion cannot be characterized as "*de minimis.*" *See* majority op. at 16-17. The stigma associated with the exit order jeopardizes the driver's reputation in the community. This is especially the case in our contemporary social media environment in which videos are constantly uploaded with little or no context given. A driver forced to exit the vehicle for a K-9

sweep may be viewed not only by passersby, but also by anyone around the world.

Thus, I disagree with the majority that an exit order merely affects "the driver's interest in his location during a lawful traffic stop: in his car or out." *See id.* The exit command is an additional, significant intrusion into the driver's right to personal security. The majority's ends-justify-the-means emphasis on the presence of contraband cannot justify the fact that innocent law-abiding people, whose only misdeed may have been the unwitting commission of a slight traffic infraction (e.g., failure to use a seat belt), may be commanded to exit the vehicle or face the very real prospect of forced removal.

In sum, the forced removal of a driver from the vehicle before probable cause of the existence of contraband has been established—and without any evidence that such seizure is necessary to ensure officer safety during issuance of a traffic citation—constitutes an unreasonable seizure without any justification under the Fourth Amendment. For these reasons, I dissent.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Second District - Case No. 2D2019-3085

(Hillsborough County)

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, David M. Costello, Deputy Solicitor General, and Robert Scott Schenck, Solicitor General Fellow, Tallahassee, Florida, and C. Suzanne Bechard, Chief Assistant Attorney General, and Linsey Sims-Bohnenstiehl, Assistant Attorney General, Tampa, Florida,

    for Petitioner

Howard L. "Rex" Dimmig, II, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

    for Respondent

Robert Wayne Evans of Allen, Norton & Blue, P.A., Tallahassee, Florida,

    for Amicus Curiae Florida Sheriffs Association

J. David Marsey of Rumberger, Kirk & Caldwell, P.A., Tallahassee, Florida,

    for Amicus Curiae Florida Police Chiefs Association

Christie S. Utt, General Counsel, Florida Department of Highway Safety and Motor Vehicles, Tallahassee, Florida,

    for Amicus Curiae Florida Department of Highway Safety and Motor Vehicles

Carlos J. Martinez, Public Defender, and Andrew Stanton, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida, and Matthew J. Metz, Public Defender, and Robert Jackson Pearce III, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

    for Amicus Curiae Florida Public Defender Association, Inc.